# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 71711-1-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| SHELLY BERNARD FORD III, | |
| Appellant. | FILED: April 27, 2015 |

APPELWICK, J. — Ford appeals his conviction for possession of a controlled substance, arguing that the court should have suppressed the drug evidence as the product of an unlawful seizure and detention. The police conducted a lawful Terry stop and detention. Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Therefore, the trial court properly denied Ford's motion to suppress. We affirm.

## FACTS

Based on evidence recovered after police seized and detained Shelly Ford III, the State charged him with possession of a controlled substance. Prior to trial, Ford moved to suppress the controlled substance as the product of an unlawful detention.

At the motion hearing, Everett Police Officer Tim Collings testified that on January 29, 2012, he responded to a report of a residential disturbance. The person reporting the disturbance said the perpetrator was a man named "Shelly Ford." While en route to the residence, Officer Collings received dispatch reports indicating the suspect was a 32 year old black male who had left the scene on

foot. Officer Collings also learned of an outstanding misdemeanor warrant for a man named "Shelly Bernard Ford III." The warrant described him as a black male born in 1978.

When Officer Collings arrived at the scene of the disturbance, he noticed a black male, later identified as Ford, walking a few blocks away. As Officer Collings approached Ford in his patrol car, Ford began to run. Officer Collings activated his emergency lights and notified dispatch that he "saw a male matching the description." He yelled at Ford to stop running. Ford complied. Officer Collings then asked Ford for his name. Ford replied, "Shelly." Ford glanced around as if "looking for an avenue of escape." Because Officer Collings was alone and Ford had already fled once, he ordered Ford to drop to his knees "to prevent him from running again." He then called for back-up.

When another officer arrived, Officer Collings confirmed Ford's name and warrant status. He then removed Ford's backpack, handcuffed him, and placed him under arrest. As Officer Collings carried the backpack to his patrol car, a prescription pill bottle containing a controlled substance, Oxycodone, fell out of the backpack. Ford did not have a prescription for Oxycodone.

In support of the motion to suppress, defense counsel argued that a Terry stop was not justified until Officer Collings confirmed Ford's full name. Counsel maintained that prior to receiving that information, Officer Collings lacked an

articulable suspicion that the Shelly Ford he was pursuing was the Shelly Ford III

described in the outstanding warrant. The court disagreed, stating in part:

> I find that this was in fact a valid [Terry] stop, that the reasonable articulable facts that the officer had in his possession at the time that he made the stop were numerous. He had a name. He has the race of the individual. He had the sex of the individual, the age of the individual. The fact that he's traveling on foot, and lastly, within the 2004 block of Columbia. At the time he made contact with the defendant, he was able to confirm the same race, the same sex, same approximate age, the fact that the person was on foot, and only a half a mile away from the location of the alleged disturbance. Those are enough facts for him to have made a stop.
>
> To the extent that he was required to turn on his lights and command the defendant to stop when the individual began running is not unreasonable. I don't find that there was an unreasonable amount of force used and that for officer safety it was reasonable for him to ask the defendant to wait on his knees while backup came. The [Terry] stop was not unusual in its length. There were no facts presented that this went on for a very long period of time, or that there was a significant amount of time between the time of the call and the time of the contact such that it would be unreasonable to believe that the defendant would be the person who would still be in the area.
>
> Finally, the officer verified fairly quickly the name of the individual. Upon making the [Terry] stop he was able to confirm there was a warrant out for his arrest, and then at that time, once he was lawfully under arrest, pills were spilled out of the backpack through no fault of the officer. To the extent pills were found by the officer, they were either in plain view or they were found incident to a lawful search pursuant to the arrest. Therefore, the defendant's motion is denied.

The case proceeded to a bench trial on stipulated facts. The court found

Ford guilty as charged. He appeals.

- 3 -

DECISION

Warrantless seizures are per se unreasonable and violate both the Fourth Amendment and article I, section 7 of the Washington State Constitution. State v. Williams, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984). However, there are a few "'jealously and carefully drawn exceptions' to the warrant requirement." Id. (quoting State v. Houser, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)). These include an investigatory detention, or Terry stop, if police have "a reasonable suspicion, grounded in specific and articulable facts that the person stopped has been . . . involved in a crime." State v. Acrey, 148 Wn.2d 738, 746-47, 64 P.3d 594 (2003). The level of suspicion necessary to support an investigatory detention is a "substantial possibility that criminal conduct has occurred or is about to occur." State v. Kennedy, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). Whether an officer's suspicion is reasonable is determined by the totality of the circumstances known to the officer at the inception of the stop. State v. Rowe, 63 Wn. App. 750, 753, 822 P.2d 290 (1991). Whether circumstances justify a Terry stop is a question of law that we review de novo. State v. Bailey, 154 Wn. App. 295, 299, 224 P.3d 852. We review findings of fact for substantial evidence. State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994).

Ford contends the Terry stop in this case was unlawful in several respects. First, he contends Officer Collings lacked the requisite suspicion of criminal activity because the tip police received regarding the disturbance was

- 4 -

not reliable. This contention was not raised below. We need not consider grounds for suppression that are raised for first time on appeal. State v. Garbaccio, 151 Wn. App. 716, 731, 214 P.3d 168 (2009).

Second, Ford contends his flight from Officer Collings was insufficient to justify a Terry Stop. While flight from police is insufficient by itself to support an investigatory detention, it is a factor courts consider in assessing the totality of the circumstances. State v. Little, 116 Wn.2d 488, 504, 806 P.2d 749 (1991). Here, the circumstances included: (i) the suspect matched the age, race, gender, and location of a man identified in the dispatch report as Shelly Ford, (ii) the reported age, race, and name of the suspect matched the warrant subject's description, and (iii) the suspect fled in the presence of police. Taken together, these circumstances supported an articulable suspicion that Ford was the person named in the warrant.

Third, Ford claims his detention was unlawful because it "was significantly longer and more intrusive than necessary to dispel or verify any suspicion of criminal activity." The trial court found that "[t]he Terry stop was not unusual in its length. There were no facts presented that this went on for a very long period of time." (Emphasis added.) We have reviewed the record and also find no evidence supporting Ford's claim. The record does not indicate how much time elapsed between his seizure and the confirmation of his warrant status at the scene. In addition, his claim that it was "not necessary to wait for a cover officer

to arrive to confirm [his] identity" ignores the evidence that he was a flight risk and posed safety concerns for an officer working alone at night.

Ford's detention was also not unreasonably intrusive. Intrusive measures such as drawn weapons, handcuffs, and positioning suspects on the ground or on their knees may be appropriate in a Terry stop. State v. Belieu, 112 Wn.2d 587, 602, 773 P.2d 46 (1989); State v. Mitchell, 80 Wn. App. 143, 145-46, 906 P.2d 1013 (1995) (handcuffing, secluding suspect, and drawing guns may be appropriate). Circumstances bearing on the reasonableness of such actions include the nature of the crime, the degree of suspicion, the location of the stop, the time of day, the number of officers present, and the reaction of the suspect to the police. Belieu, 112 Wn.2d at 600; Washington v. Lambert, 98 F.3d 1181, 1189-90 (9th Cir. 1996). Intrusive techniques may be reasonable "where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight." Washington v. Lambert, 98 F.3d at 1189 (emphasis added); Abbott v. Sangamon County, Illinois, 705 F.3d 706, 724 (7th Cir. 2013).

Officer Collings was alone at night with a suspect who had already fled once and was preparing to flee again. In addition, Collings confirmed after the stop that the suspect's name was "Shelly." This bolstered Officer Collings's degree of suspicion that Ford was the Shelly Ford described in the warrant. In

these circumstances, directing Ford to stay on his knees until back-up arrived was reasonable.

Affirmed.

Appelwick, J

Leach, J

Cox, J.