# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 689291-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SARAH S. HUFFMAN, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 22, 2014 |

SPEARMAN, C.J. — Sarah Huffman was arrested for driving under the influence of alcohol (DUI) after being pulled over for weaving in her lane, jerking back from and crossing the centerline on State Route 9. She claimed the stop was unlawful because her single crossing of the centerline did not give rise to reasonable, articulable suspicion that she committed a traffic infraction under RCW 46.61.140. The district court agreed and granted her motion to suppress all evidence obtained after the stop. On RALJ appeal, the superior court reversed, concluding the stop was valid because Huffman committed a traffic infraction by crossing the centerline in violation of RCW 46.61.100. We granted Huffman's motion for discretionary review and affirm.

## FACTS

On October 18, 2010, Trooper Daniel Eberle was traveling southbound on State Route 9 when he observed the vehicle ahead of him weaving within its lane for approximately two miles. The two-mile section of the roadway is relatively straight, with a painted yellow line in the center that is at times a double solid line

and at times a single dashed line. On that night, Trooper Eberle observed no visible debris or branches present that would cause a driver to deviate from the lane of travel. The trooper saw Huffman's vehicle touch the centerline three times, each time immediately jerking back to the right side of the road. On the fourth occasion, the vehicle crossed the centerline by approximately one full tire width. Trooper Eberle did not recall any oncoming traffic at the time the vehicle crossed over the centerline. He stopped the vehicle and subsequently arrested the driver, appellant Sarah Huffman, for driving under the influence.

Huffman was charged with DUI in Snohomish County District Court. She moved to suppress all evidence obtained after the stop, including her pre-arrest screening and blood alcohol content (BAC) test results. Relying on our ruling in State v. Prado, 145 Wn. App. 646, 649, 186 P.3d 1186 (2008), Huffman argued that her momentary crossing of the centerline was not a traffic infraction and thus, there was no lawful basis for the stop. The State argued that the stop was lawful under RCW 46.61.100 and under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The district court agreed with Huffman and found the stop unlawful under Prado and because there were no reasonable grounds for suspicion that Huffman had committed a DUI. The court granted the motion and dismissed the case.

On RALJ appeal the State argued the stop was valid under Terry and lawful under RCW 46.61.100 because Prado was inapplicable to that statute. The RALJ court ruled that Huffman's one time incursion over the centerline did not violate RCW 46.61.140, but violated RCW 46.61.100, and therefore the infraction stop was

2

lawful.[1] We granted Huffman's motion for discretionary review to consider whether the "as nearly as practicable" language of RCW 46.61.140 applies to RCW 46.61.100.

## DISCUSSION

### Interpreting the Statutes

This case involves two traffic statutes, RCW 46.61.100 and RCW 46.61.140.[2] When construing a statute, our goal is to determine and effectuate legislative intent. Swinomish Indian Tribal Cmtv. v. Dep't. of Ecology, 178 Wn.2d 571, 581, 311 P.3d 6 (2013). We give effect to the plain meaning of the language used as the embodiment of that intent. Id. We read the statute as a whole to give effect to all language used. In re Pers. Restraint of Skylstad, 160 Wn.2d 944, 948, 162 P.3d 413 (2007). "[I]f the statute is unambiguous after a review of the plain meaning, the court's inquiry is at an end." Lake v. Woodcreek Homeowners Ass'n., 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Only statutes that are ambiguous require judicial construction, and constructions that would yield "'unlikely' or 'absurd results'" should be avoided. Densely v. Dep't of Retirement Sys., 162 Wn.2d 210,

---

[1] The RALJ court ruled that because the officer did not expressly testify that Huffman's driving indicated that she was driving under the influence, there was no reasonable, articulable suspicion that she had committed that crime. This was error. It is well settled that "the existence of such reasonable suspicion is determined based on an objective view of the known facts, and is not dependent upon the officer's subjective belief or upon the officer's ability to correctly articulate his or her suspicion in reference to a particular crime." State v. Mitchell, 80 Wn. App. 143, 147, 906 P.2d 1013 (1995). Whether a particular set of facts warrant a legal conclusion that reasonable grounds for suspicion or probable cause exists is a matter for the trial court to decide. Id. at 148. The trial court erred when it relied on Officer Eberle's subjective belief to decide whether the facts were sufficient to constitute reasonable grounds for suspicion that Huffman was driving under the influence.

[2] Huffman also argues that RCW 46.61.120 supports her position because it permits driving left of the centerline when overtaking and passing traffic proceeding in the same direction when authorized by RCW 46.61.100 through .160 and .212. But because it is undisputed that Huffman was not overtaking and passing at the time she crossed the centerline, it is of no help to her nor does it aid us in our analysis of RCW 46.61.100 and .140.

3

221, 173 P.3d 885 (2007) (quoting State v. Contreras, 124 Wn.2d 741, 747, 880 P.2d 1000 (1994)).

RCW 46.61.100(1) is explicit that driving on the right half of the roadway and in the right hand lane is mandatory, subject to five specific exceptions.[3] It provides:

(1)     Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

(a) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

(b) When an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;

(c) Upon a roadway divided into three marked lanes and providing for two-way movement traffic under the rules applicable thereon;

(d) Upon a street or highway restricted to one-way traffic; or

(e) Upon a highway having three lanes or less, when approaching a stationary authorized emergency vehicle, tow truck or other vehicle providing roadside assistance while operating warning lights with three hundred sixty degree visibility, or police vehicle as described under *RCW 46.61.212(2).

Crossing the centerline is a traffic infraction unless one of the five enumerated exceptions applies. RCW 46.63.020.

RCW 46.61.140 addresses the safe changing of lanes (right or left or turn) and the use of a center lane, but does not mention a centerline. RCW 46.61.140(1) states:

---

[3] Huffman does not contend that any of the five exceptions are applicable to her.

4

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

The statute makes no mention of driving to the left of the center lane, nor does it require driving in a particular lane.[4] Washington courts have applied RCW 46.61.140(1) when considering whether "brief incursions over the lane lines" and fog lines give rise to a lawful vehicle stop. Prado, 145 Wn. App. at 649 (no traffic violation where vehicle crossed over into exit lane for one second); State v. Nichols, 161 Wn.2d 1, 5-6, 162 P.3d 1122 (2007) (vehicle pulling into far right lane after turning left out of a parking lot violated RCW 46.61.140).

---

[4] In its entirety RCW 45.61.140 provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
>
> (2) Upon a roadway which is divided into three lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle traveling in the same direction when such center lane is clear of traffic within a safe distance, or in preparation for making a left turn or where such center lane is at the time allocated exclusively to traffic moving in the same direction that the vehicle is proceeding and such allocation is designated by official traffic-control devices.
>
> (3) Official traffic-control devices may be erected directing slow moving or other specified traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway and drivers of vehicles shall obey the directions of every such device.
>
> (4) Official traffic-control devices may be installed prohibiting the changing of lanes on sections of roadway and drivers of vehicles shall obey the directions of every such device.

Huffman argues that RCW 16.61.100 and .140 are "not intended to be read and applied in isolation but in a manner to harmonize with each other."[5] Brief of Appellant at 12. She contends that to harmonize the two statutes, the "as nearly as practicable" language of RCW 46.61.140 must be read into RCW 46.61.100, such that minor deviations over the centerline are permissible as long as the driver remains as nearly as practicable within a single lane. She argues that this should be so because it has long been recognized that motor vehicles "do not travel in perfect vectors" down the roadway. Brief of Appellant at 12. Even accepting this assertion as a practical reality, the argument is misplaced because it is more properly addressed to the legislature. We are not at liberty to add language to a statute merely because "we believe the Legislature intended something else but failed to express it adequately." Wash. State Coalition for the Homeless v. Dep't. of Social & Health Servs., 133 Wn.2d 894, 904, 949 P.2d 1291 (1997) (citing Geschwind v. Flanagan, 121 Wn.2d 833, 841, 854 P.2d 1061 (1993)).

Moreover, it is entirely reasonable for the legislature to mandate that all vehicles remain right of the centerline except in certain discrete situations because of the obvious danger created when a vehicle crosses the centerline into on-coming traffic. Similarly, permitting some leeway for momentary crossings into lanes of traffic traveling the same direction is also perfectly reasonable. Reading the statutes in this way easily harmonizes them and gives effect to the statutory language as

---

[5] At oral argument, Huffman cited RCW 46.98.020 as additional authority in support of her argument that the two statutes are to be harmonized. This section states that "[t]he provisions of this title shall be construed in pari materia even though as a matter of prior legislative history they were not originally enacted in the same statute."

written. Because neither statute is ambiguous, whether read separately or in context, we decline Huffman's invitation to engage in further statutory construction.

Huffman also argues that because the "overriding concern" of the traffic statutes is for vehicle safety, RCW 46.61.100 should be construed to permit vehicles to momentarily drift across the centerline, in the absence of some perceived danger, such as oncoming traffic. Brief of Appellant at 19. The argument has no merit. It ignores the fact that the legislature did not create an exception in RCW 46.61.100 for crossing the centerline merely because a driver perceives that it is safe to do so. Moreover, construing the statute as Huffman suggests would lead to an absurd result. Even where the statute permits crossing the centerline, it mandates that it be done only after "the driver has first ascertained that such movement can be made with safety." RCW 46.61.140(1), see also RCW 46.61.120 (permitted when overtaking and passing only if the "left side is clearly visible and is free of oncoming traffic...."); RCW 46.61.100(1)(b) (permitted upon encountering an obstruction in the right lane "provided, any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction...."). In light of these explicit legislative directives that crossing the centerline be undertaken with intention and care, it would be absurd to read the statute to permit inadvertent meandering across the centerline.

Finally, Huffman argues that a strict construction of RCW 46.61.100 would make RCW 46.61.140's "as nearly as practicable" language superfluous. This is incorrect; the two statutes do not cancel each other out. The statutes' plain meanings are clear; RCW 46.61.100 requires drivers to stay on the right half of the

road unless an exception applies, and RCW 46.61.140 requires drivers to drive within a single lane as nearly as practicable.

Huffman cites case law from other states to support her interpretation of the statutes, but none of it applies. Only one of the cases involved a centerline crossing, while all of the others involved lane and edge lines. In that case, State v. Caron, 534 A.2d 978, 979 (Me. 1987), a "single, brief straddling of the center line of the undivided highway" did not constitute a violation of any traffic law, so there was no probable cause for a stop. All of the other state courts that have considered the matter have declined to extend the "nearly as practicable" qualifier to crossings of the centerline.[6]

Based on the plain reading of the two statutes and their different objectives, we find that the "nearly as practicable" qualifying language from Section 140 does not apply to RCW 46.61.100. Our decision in Prado is limited to its facts which involved only a violation of RCW 46.61.140, not RCW 46.61.100.

Because it is undisputed that Huffman crossed the centerline, the officer was justified in stopping her to investigate a violation of RCW 46.61.100. We affirm the RALJ court's decision to vacate and reverse the trial court's orders suppressing all

---

[6] The various state equivalents of RCW 46.61.100 have the same mandatory language, but contain additional or different exceptions. Similarly, the states' RCW 46.61.140 counterparts vary in the number of lanes that are required for the statute to apply, but all contain the "as nearly as practicable" language. See Commonwealth v. Enick, 70 A.3d 843, 847 (2013), (the "as nearly as practicable" language did not apply to the state's Section 100 statute); Widdicombe v. State ex rel. Lafond, 2004 MT 49, ¶¶10-11, 320 Mont. 133, 85 P.3d 1271 (2004), ("In contrast to the 'practicality' standard [of the equivalent RCW 46.61.140], the word 'shall' in [the state's RCW 46.61.100], is a mandatory term, prohibiting drivers from carelessly crossing the yellow center line and subjecting themselves and other drivers on the road to the possibility of a head-on collision."); State v. Garza, 295 Kan. 326, 328-29, 286 P.3d 554, 557 (2012) (the equivalents of RCW 46.61.100, not RCW 46.61.140 applied, when vehicle crossed into a left-of-center lane even though the centerline was not visible).

evidence and dismissing the prosecution. We reinstate the charges against Huffman and remand this matter to the district court for trial.

Affirmed and remanded.

Spearman, C.J.

WE CONCUR: