# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 9, 2015 Session

## STATE OF TENNESSEE v. WILLIAM WHITLOW DAVIS, JR.

**Appeal from the Court of Criminal Appeals**
**Criminal Court for Knox County**
No. 95235     John F. Dugger, Jr., Judge

---

### No. E2013-02073-SC-R11-CD – Filed February 11, 2016

---

We granted permission to appeal in this case to determine whether the traffic stop of the Defendant, William Whitlow Davis, Jr., violated the constitutional rights of the Defendant. The arresting officer initiated the stop after observing the Defendant cross the double yellow center lane lines with the two left wheels of the Defendant's car. The Defendant subsequently was charged with driving under the influence and a traffic violation. The Defendant filed a motion to suppress, contending that the traffic stop was unconstitutional. After a hearing, the trial court denied the motion to suppress. The Defendant then pleaded guilty to driving under the influence and reserved a certified question of law regarding the legality of his traffic stop. The Court of Criminal Appeals affirmed the judgment. We hold that the traffic stop was supported by probable cause. Therefore, we affirm the Defendant's judgment of conviction.

### Tenn. R. App. P. 11; Judgment of the
### Court of Criminal Appeals Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and CORNELIA A. CLARK and HOLLY KIRBY, JJ., joined.

William W. Davis, Jr., pro se (on appeal), Knoxville, Tennessee, and Donald A. Bosch and Ann Short (at trial), Knoxville, Tennessee, for the appellant, William Whitlow Davis, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Leslie E. Price, Senior Counsel; Randall E. Nichols, District Attorney General; and Sarah Winningham Keith, Assistant District Attorney, for the appellee, the State of Tennessee.

# OPINION

## Factual and Procedural History

The Defendant was charged in August 2010 with two alternative counts of driving under the influence and one count of failing to drive within a single lane in violation of Tennessee Code Annotated section 55-8-123 (2008). The Defendant filed a motion to suppress on the basis that his traffic stop was unconstitutional. At the ensuing hearing, held in August 2013, the following proof was adduced:

Officer Jerry Massey of the Knox County Sheriff's Office testified that, while he was on patrol on October 23, 2009, he received a "be on the lookout" ("BOLO") from dispatch concerning a green BMW. The information he received indicated that the driver "had a loaded handgun in the vehicle and was under the influence." Based on the information in the BOLO, Officer Massey drove to a parking lot at the corner of Northshore Drive and Keller Bend Road and parked. Approximately twenty-five minutes later, he saw a green BMW being driven south on Keller Bend Road. Officer Massey described Keller Bend Road as a curvy, two-lane road without shoulders.

Officer Massey began following the BMW. He testified, "I observed his initial driving. He crossed over the yellow double line a couple of times, several times. And he was traveling in excess of the 25 miles an hour posted speed limit." Officer Massey stated that he determined the BMW's speed by "pac[ing]" the car while he followed it for approximately one quarter of a mile.

Officer Massey stated that he turned on his cruiser's video camera and again saw the Defendant cross the double yellow center lane lines. Officer Massey turned on his emergency lights, and the Defendant pulled over into a driveway on the right-hand side of Keller Bend Road. When Officer Massey spoke with the Defendant, he noticed "a strong odor of an alcoholic beverage coming from his breath" and "slurred speech."

On cross-examination, Officer Massey acknowledged that he did not find a weapon in the BMW after he searched it. Nor did he find a weapon on the Defendant's person.

The video recording made from Officer Massey's cruiser was played in court during cross-examination. The recording shows the BMW crossing the double yellow center lane lines while negotiating a right-hand curve prior to Officer Massey turning on the cruiser's blue lights. Officer Massey acknowledged that the recording began at 2:28:22, and he explained that, for the first nineteen seconds of the video, he was driving fast enough to catch up to the BMW. Officer Massey stated that there was no oncoming

2

traffic at the time he saw the BMW cross the center lines with its two left wheels. Officer Massey testified that his basis for stopping the Defendant was the "lane violation" and the BOLO.

After Officer Massey's testimony, the defense submitted a video of Keller Bend Road which was admitted into evidence without objection.

On the basis of this proof, the trial court denied the Defendant's motion to suppress.[1] The court found that, "at 2:28:53, approximately, the officer observed the vehicle['s] left wheels go over the double yellow line. That is a violation of the law. Under 55-8-115, all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway[.]" The trial court found that none of the exceptions contained in section -115 were applicable to the BMW's line crossing and concluded that, based on his observation of the BMW crossing the center lane lines, Officer Massey had "reasonable and articulable facts" to stop the vehicle. The trial court ruled, "I have to deny your Motion to Suppress because he crossed the double yellow line. He violated the rules of the road, so . . . ." The trial court also found that the proof did not support Officer Massey's conclusion that the Defendant had been speeding.

The Defendant subsequently pleaded guilty to one count of driving under the influence[2] and reserved the following certified question of law:

> In the early morning hours of October 23, 2009, Knox County Sheriff's Deputy Massey[3] observed a vehicle driven by the Defendant traveling on Keller Bend Road in Knox County. Deputy Massey effected a seizure of the Defendant by activating his emergency lights, in response to which the Defendant stopped his vehicle. Deputy Massey subsequently arrested the Defendant and took him into custody for the offense of DUI. Did the trial court correctly conclude that the State carried its burden to show that the traffic stop of the Defendant was justified by reasonable suspicion or probable cause that a criminal offense had been or was about to be committed, based on the manner in which the Defendant was operating his vehicle on Keller Bend Road?

---

[1] We note that, during argument to the trial court at the hearing on the motion to suppress, defense counsel acknowledged that there was "a slight cross of [the Defendant's] wheels over the center line." Indeed, the Defendant himself acknowledges in his supplemental brief to this Court that the video shows him "slightly crossing" the center lane lines.

[2] The State nolled the remaining two counts.

[3] Although Officer Massey identified himself as "Officer Massey" at the hearing on the motion to suppress, the certified question refers to him as "Deputy Massey."

3

(Footnote added). The Court of Criminal Appeals affirmed the trial court's judgment on the merits, concluding that Officer Massy had both probable cause and reasonable suspicion to stop the Defendant. See State v. Davis, No. E2013-02073-CCA-R3-CD, 2014 WL 6883628, at *3 (Tenn. Crim. App. Dec. 8, 2014). We subsequently granted the Defendant's application for permission to appeal.

## Standard of Review

We will uphold a trial court's findings of fact at a suppression hearing unless the evidence preponderates to the contrary. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. "We afford to the party prevailing in the trial court the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). As to the trial court's application of the law to the facts, however, we apply a de novo standard of review. Id.

## Analysis

*Warrantless Seizures*

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV. Likewise, Article I, Section 7 of the Tennessee Constitution provides that "the people shall be secure . . . from unreasonable searches and seizures." Tenn. Const. art. I, § 7. This Court has stated that the Tennessee Constitution's search and seizure provision "is identical in intent and purpose with the Fourth Amendment." Sneed v. State, 423 S.W.2d 857, 860 (Tenn. 1968); see also, e.g., State v. Scarborough, 201 S.W.3d 607, 622 (Tenn. 2006). Accordingly, "under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996)). A police officer seizes a motorist when he turns on his blue lights in order to pull the motorist over. See State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993).

One of the narrowly defined exceptions to the warrant requirement is met when a police officer has probable cause to believe that the suspect has committed, is committing, or is about to commit a criminal offense. State v. Echols, 382 S.W.3d 266,

4

277-78 (Tenn. 2012); see also Tenn. Code Ann. § 40-7-103(a)(1) (2006) ("An officer may, without a warrant, arrest a person . . . [f]or a public offense committed . . . in the officer's presence[.]"). "It is well established that a traffic violation—however minor—creates probable cause to stop the driver of a vehicle." United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996) (quoting United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993)) (internal quotation marks omitted); see also State v. Berrios, 235 S.W.3d 99, 105 (Tenn. 2007) (recognizing that, "[a]s a general rule, if the police have probable cause to believe a traffic violation has occurred, the stop is constitutionally reasonable" (citing Whren v. United States, 517 U.S. 806, 810 (1996))); State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997) (holding that officers' observation of defendant's violations of traffic laws created probable cause to stop defendant).

As this Court recently reiterated,

> Probable cause exists when "at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." Echols, 382 S.W.3d at 277-78 (quoting Beck v. Ohio, 379 U.S. 89 (1964)) (alterations and internal quotation marks omitted). It requires "more than a mere suspicion." State v. Lawrence, 154 S.W.3d 71, 76 (Tenn. 2005). Instead, a probable cause inquiry focuses on probabilities rather than technicalities and is grounded in the factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians, act. State v. Melson, 638 S.W.2d 342, 351 (Tenn. 1982) (quoting Draper v. United States, 358 U.S. 307, 313 (1959)).

State v. Bishop, 431 S.W.3d 22, 36 (Tenn. 2014) (some citations shortened). We emphasize that "the strength of the evidence necessary to establish probable cause . . . is significantly less than the strength of evidence necessary to find a defendant guilty beyond a reasonable doubt." Id. at 41; see also Adams v. Williams, 407 U.S. 143, 149 (1972) ("Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction."). Significantly, "the constitutional validity of the [seizure] does not depend on whether the suspect actually committed any crime," and "it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with or whether a person is later acquitted of the crime for which she or he was arrested." Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (citations omitted).

*Traffic Offenses*

One of Tennessee's traffic statutes, or "rules of the road," provides as follows:

> Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway, except as follows:
>
> (1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
>
> (2) When the right half of a roadway is closed to traffic while under construction or repair;
>
> (3) Upon a roadway divided into three (3) marked lanes for traffic under the applicable rules thereon; or
>
> (4) Upon a roadway designated and signposted for one-way traffic.

Tenn. Code Ann. § 55-8-115(a) (2008) ("Section 115"). Additionally, our rules of the road define "roadway" as "that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the berm or shoulder." Tenn. Code Ann. § 55-8-101(52) (2008). "Highway" is in turn defined as "the entire width between the boundary lines of every way when any part thereto is open to the use of the public for purposes of vehicular travel." Id. § 55-8-101(22). Finally, Tennessee Code Annotated section 55-8-103 provides that "[i]t is unlawful and, unless otherwise declared in this chapter and chapter 10, parts 1-5 of this title with respect to particular offenses, it is a Class C misdemeanor, for any person to do any act forbidden or fail to perform any act required in this chapter and chapter 10 of this title." Id. § 55-8-103 (2008).

In this case, Officer Massey turned on his blue lights and pulled the Defendant over after witnessing the Defendant cross over the double yellow center lane lines of Keller Bend Road with the BMW's two left wheels.[4] The question before us is whether Officer Massey's observation of this conduct provided him with probable cause to seize the Defendant for violating Section 115. Thus, we must determine the extent to which Section 115 proscribes a motorist from crossing a center lane line while driving. This is an issue of first impression before this Court.

---

[4] Although Officer Massey testified that he saw the Defendant cross the double yellow lane lines more than once, the trial court referred to the Defendant's lane crossing in the singular. Accordingly, we have assumed for the basis of this appeal that the Defendant crossed the double yellow lane lines a single time.

The role of this Court in statutory interpretation is to assign a statute the full effect of the legislative intent without restricting or expanding the intended scope of the statute. State v. Springer, 406 S.W.3d 526, 533 (Tenn. 2013); State v. Marshall, 319 S.W.3d 558, 561 (Tenn. 2010). In doing so, we must look to the plain language of the statute to determine the legislature's intent. State v. Jennings, 130 S.W.3d 43, 46 (Tenn. 2004). We must presume that "every word in the statute has meaning and purpose and should be given full effect if the obvious intent of the General Assembly is not violated by so doing." Marshall, 319 S.W.3d at 561 (quoting Larsen-Ball v. Ball, 301 S.W.3d 228, 232 (Tenn. 2010)). When the language of a statute is clear and unambiguous, "the legislative intent shall be derived from the plain and ordinary meaning of the statutory language." State v. Wilson, 132 S.W.3d 340, 341 (Tenn. 2004).

As it did in this case, our Court of Criminal Appeals has concluded on occasion that an officer has grounds to stop a motorist after seeing him or her drive across the center lane line(s), although not on the basis of Section 115. See, e.g., State v. Watson, 354 S.W.3d 324, 331 (Tenn. Crim. App. 2011) (holding that, "even if [the defendant] only crossed the double yellow lines one time, without reasonable cause, that evidence in and of itself would equate to probable cause to initiate a traffic stop," but citing to Tennessee Code Annotated sections 55-8-121 and 55-8-123 and not referring to Section 115); State v. Davidson, No. E2007-02841-CCA-R3CD, 2008 WL 8429683, at *5 (Tenn. Crim. App. Sept. 10, 2008) (holding that, "[e]ven if [motorist] only crossed the double yellow [center lane] lines one time, that evidence in and of itself would equate to probable cause to initiate a traffic stop under Tennessee Code Annotated sections 55-8-121 or 55-8-123"); State v. Page, No. M2007-00485-CCA-R3-CD, 2008 WL 544642, at *3 (Tenn. Crim. App. Feb. 13, 2008) (upholding stop made after officer saw defendant drive across double yellow line, but not referring to Section 115); State v. Gregory, No. M2002-10461-CCA-R3-CD, 2003 WL 21766250, at *7 (Tenn. Crim. App. July 29, 2003) (holding that, "once the defendant crossed the double yellow line on Long Hollow Pike, [the officer] had the right to stop him," referring to Tennessee Code Annotated section 55-8-121 and 54-16-109 but not to Section 115), perm. appeal denied (Tenn. Dec. 15, 2003).

The United States District Court for the Eastern District of Tennessee has concluded that an officer had probable cause to believe that a motorist had violated Section 115 upon observing the motorist's vehicle "straddling the double yellow line dividing the roadway, on a road that was sufficiently wide to accommodate travel in a single lane." United States v. Lawson, No. 1:10-cr-13-18, 2010 WL 2696509, at *3 (E. D. Tenn. June 11, 2010); see also United States v. Brown, No. 1:07-CR-9, 2007 WL 1345463, at *7 (E.D. Tenn. May 7, 2007) (holding that officer had probable cause to stop defendant for violating Section 115 by driving down a center turn lane for approximately 300 feet, among other traffic infractions).

7

Many of our sister states have construed statutes similar to Section 115 as proscribing a motorist from driving across a center lane line. For instance, in State v. Hopper, 917 P.2d 872 (Kan. 1996), the Kansas Supreme Court considered a traffic statute

> requir[ing] that all vehicles be driven on the right half of the roadway, subject to four exceptions:
>
> (1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
>
> (2) When an obstruction exists making it necessary to drive to the left of the center of the highway, except that any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;
>
> (3) Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon; or
>
> (4) Upon a roadway restricted to one-way traffic.

Id. at 875 (quoting Kan. Stat. Ann. § 8-1514) (internal quotation marks omitted). The court held that this statute created a strict liability offense and that a police officer was justified in stopping a motorist upon observing the motorist driving left of center in the absence of any of the four exceptions. Id. at 873, 877; see also State v. Chavez-Zbarra, 221 P.3d 606, 608 (Kan. Ct. App. 2009) (holding that officer was justified in stopping motorist after observing motorist cross center lane line a single time in absence of any statutory exceptions).

Similarly, the Montana Supreme Court has construed its comparable statute as "prohibiting drivers from carelessly crossing the yellow center line and subjecting themselves and other drivers on the road to the possibility of a head-on collision." Widdicombe v. State ex rel. Lafond, 85 P.3d 1271, 1274 (Mont. 2004) (citing Mont. Code Ann. § 61-8-321(1) (2001)). Therefore, "[d]riving a vehicle across the yellow center line, absent one of the statutory exceptions, constitutes a traffic violation under [Mont. Code Ann. § 61-8-321]." Id. Accordingly, the defendant motorist's traffic stop was constitutionally sound after an officer observed him "crossing the center line by at least a tire's width, placing a portion of his vehicle in the wrong traffic lane, thereby creating an obvious danger to on-coming traffic." Id.

8

Employing like reasoning, the Washington Court of Appeals held it to be a violation of its comparable statute when a vehicle crossed a center lane line by only a tire's width. State v. Huffman, 340 P.3d 903, 907 (Wash. Ct. App. 2014). Because the statute provided that "[u]pon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway" subject to five specific and inapplicable exceptions, id. at 905 (quoting Wash. Rev. Code § 46.61.100(1)), the court rejected the defendant's argument that minor deviations over the centerline did not violate the statute, id. at 906-07. Recognizing the "practical reality" that vehicles "do not travel in perfect vectors," the court concluded that this argument was "misplaced because it is more properly addressed to the legislature." Id. at 906. The court continued: "Moreover, it is entirely reasonable for the legislature to mandate that all vehicles remain right of the centerline except in certain discrete situations because of the obvious danger created when a vehicle crosses the centerline into on-coming traffic." Id. The court held that the challenged stop was justified based on the officer's observation of the defendant crossing the center lane line. Id. at 907; see also, e.g., People v. Rush, 745 N.E.2d 157, 162 (Ill. App. Ct. 2001) (in light of statute requiring that vehicles be driven upon the right half of the roadway, "a driver's single, momentary crossing of the center line, without more, is a sufficient basis for a stop" (citing 625 Ill. Comp. Stat. 5/11-701(a))); Williams v. State, No. 27A04-1305-CR-253, 5 N.E.3d 814 (Table), 2014 WL 683987, at *3 (Ind. Ct. App. Feb. 20, 2014) (mem.) (holding that traffic stop was lawful because officer observed motorist cross the center lane line in violation of statute requiring vehicles to be driven on the right half of the road (citing Ind. Code § 9-21-8-2(a))); State v. Kramer, No. 13-1025, 855 N.W.2d 201 (Table), 2014 WL 3749370, at *2 (Iowa Ct. App. July 30, 2014) (officer's observation of motorist crossing center line gave officer probable cause to stop motorist for violating statute requiring vehicles to be driven on the right half of the roadway (citing Iowa Code § 321.297(1)(b))); State v. Carano, No. 26544, 2013 WL 1760796, at *3 (Ohio Ct. App. Apr. 24, 2013) (in light of statute requiring vehicles to be driven on right half of roadway, officer had constitutional basis to stop motorist after observing motorist's van "cross over the double yellow line" (citing Ohio Rev. Code Ann. § 4511.25(A))); Commonwealth v. Enick, 70 A.3d 843, 847-48 (Pa. Super. Ct. 2013) (in light of statute requiring that "vehicle[s] shall be driven on the right half of the roadway" subject to irrelevant exceptions, motorist's single instance of crossing center lane line constituted traffic violation creating probable cause for traffic stop (quoting 75 Pa. Cons. Stat. Ann. § 3301(a))); State v. Marshall, 8 A.3d 1086, 1088-90 (Vt. 2010) (officer's observation of motorist's vehicle crossing the yellow center line on a curve justified stop on basis that motorist violated statute requiring that "[u]pon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway" (quoting 23 Vt. Stat. Ann. § 1031(a))); Muscatell v. Cline, 474 S.E.2d 518, 527 (W. Va. 1996) (recognizing that officer would be justified in stopping motorist upon observing motorist straddling or crossing the centerline of a highway as a misdemeanor violation of drive to the right statute (citing W. Va. Code § 17C-7-1(a) (1951))).

9

In light of the plain text of Section 115, and guided by these well-reasoned decisions, we construe Section 115 as creating an offense that is committed upon a vehicle crossing the center lane line(s) of a roadway on even one occasion when none of the four delineated exceptions applies.[5] Therefore, a police officer who observes a motorist violating Section 115 will have probable cause to turn on his blue lights and stop the motorist.[6]

We recognize that Section 115 criminalizes a common driving infraction and provides police officers with a great deal of discretion in determining whether to initiate a traffic stop. Indeed, in a case arising from the traffic stop of a driver in Nebraska, the arresting officer testified that drivers cross lane lines "all the time." State v. Au, 829 N.W.2d 695, 698 (Neb. 2013). We are confident that drivers in Tennessee also cross lane lines "all the time." Nevertheless, our legislature has chosen to criminalize the common driving infraction of crossing the center lane line(s), except under four limited circumstances. By passing Section 115, our General Assembly has made a policy decision that all motorists—including legislators, law enforcement officers, prosecutors, and judges—who briefly cross a center lane line on Tennessee roadways are subject to a traffic stop for committing a misdemeanor. See State v. Smith, No. M2013-02818-CCA-R3-CD, 2015 WL 412972, at *8 (Tenn. Crim. App. Feb. 2, 2015), perm. appeal granted (Tenn. May 14, 2015). It is not for this Court to second-guess our legislature's policy decisions unless those decisions contravene either the federal or state constitutions.[7] We emphasize and agree with the Washington Court of Appeals' recognition that "it is entirely reasonable for the legislature to mandate that all vehicles remain right of the centerline except in certain discrete situations because of the obvious danger created when a vehicle crosses the centerline into on-coming traffic." Huffman, 340 P.3d at 906.

In this case, the uncontroverted proof demonstrated that, before he turned on his emergency lights, Officer Massey observed the Defendant cross the double yellow center

---

[5] Our holding is not in conflict with our decision in State v. Binette, 33 S.W.3d 215 (Tenn. 2000). In that case, we held that the officer did not have grounds to stop, on suspicion of DUI, a motorist who wove slightly within her own lane and whose left tires merely touched the center lane line. Id. at 219. This Court concluded specifically in Binette that the motorist "did not violate any rules of the road" so far as the proof demonstrated. Id. Those facts are not before us in this case. Moreover, we did not address Section 115 in Binette.

[6] We decline to hold that a motorist must violate Section 115 more than once in an officer's presence in order to provide the officer with probable cause to stop the motorist. If once is not enough, any other number becomes purely arbitrary. Moreover, if an officer must wait until he or she sees the motorist cross the center lane line(s) a third time, for instance, the officer may be witnessing a vehicular accident instead of a mere Class C misdemeanor.

[7] We note that there has been no facial constitutional challenge in this case to Section 115.

lane lines of Keller Bend Road with the two left wheels of the BMW the Defendant was driving. Moreover, the uncontroverted proof demonstrated that none of the four exceptions set forth in Section 115 was present at the time the Defendant drove his car over the center lane lines. Accordingly, Officer Massey observed the Defendant commit a Class C misdemeanor. At that point in time, Officer Massey had probable cause to initiate a traffic stop and seize the Defendant by turning on his blue lights.[8]

The Defendant attempts to make much of the fact that he was not charged with violating Section 115 but instead was indicted for violating Tennessee Code Annotated section 55-8-123, which provides in pertinent part as follows:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this section, shall apply:
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety[.]

Tenn. Code Ann. § 55-8-123(1) (2008). However, the district attorney's choice of charges to pursue against the Defendant was irrelevant to the trial court's determination of whether Officer Massey had constitutional grounds to turn on his blue lights and seize the Defendant *at the time of the seizure*. See United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993) (recognizing that probable cause determinations are fact-dependent and "turn on what the officer knew *at the time he made the stop*"). Moreover, the United States Supreme Court has concluded that, if the facts known to the officer at the time of the seizure established probable cause to believe that the suspect had committed a criminal offense, it is irrelevant if the officer was mistaken at the time about *which* specific crime had been committed. See Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004) (recognizing that the offense relied upon by an officer in seizing a suspect need not be the offense actually supported by probable cause); see also, e.g., Florida v. Royer, 460 U.S. 491, 507 (1983) (stating that "the fact that the officers did not believe there was probable cause and proceeded on a consensual or Terry-stop rationale would not foreclose the State from justifying [the defendant's] custody by proving probable cause"); State v. Tague, 676 N.W.2d 197, 201 (Iowa 2004) (recognizing that, in opposing a motion to suppress, the state is not limited to the officer's stated reasons for stopping a motorist); State v. Robinson, 622 S.W.2d 62, 68 (Tenn. Crim. App. 1981) (recognizing that "an arrest is not rendered unlawful by the fact that an officer who has authority to

---

[8] We emphasize that an officer has discretion as to when to stop drivers for crossing center lane lines. We do not mean to require or imply that a stop should be made in all such instances.

make an arrest for a particular offense erroneously states he is making an arrest for some other offense").

Thus, it is not material that the trial court relied on Section 115 instead of section -123, the section that the Defendant was charged with violating. The trial court needed to determine only whether Officer Massey had constitutional grounds sufficient to initiate a traffic stop of the Defendant at the time Officer Massey turned on his emergency lights. The trial court was correct in concluding that Officer Massey was justified in stopping the Defendant based upon his observation of the Defendant driving his car across the double yellow center lane lines of Keller Bend Road.

Officer Massey testified that he observed the Defendant cross the double yellow center lines of Keller Bend Road. As far as Officer Massey reported his observations, as reflected by the video recording, and as found by the trial court, the Defendant's crossing of the center lines was not made in conjunction with any of the circumstances set forth in Section 115 which might legally have justified the crossing. Accordingly, Officer Massey's observation of the Defendant's line crossing provided Officer Massey with probable cause to believe that the Defendant had committed an infraction of at least one of the statutes requiring drivers to stay in their own lane of travel. Accord Lawson, 2010 WL 2696509, at *3 (concluding that, because officer "testified credibly that he observed [d]efendant's vehicle straddling the double yellow line dividing the roadway, on a road that was sufficiently wide to accommodate travel in a single lane[,] . . . [the officer had] probable cause to believe [d]efendant had violated Tenn. Code Ann. § 55-8-115"). Therefore, Officer Massey's traffic stop of the Defendant satisfied constitutional requirements. The Defendant's traffic stop was not illegal, and the trial court did not err in denying the Defendant's motion to suppress.

The Defendant also attempts to draw this Court into choosing between the Court of Criminal Appeals' varying interpretations of the language contained in section -123(1), specifically whether a motorist violates that provision when she crosses a lane line a single time and thereby provides constitutionally valid grounds for a police officer to initiate a traffic stop. We acknowledge that our Court of Criminal Appeals has struggled with this issue. See, e.g., Smith, 2015 WL 412972, at *8, *9 (majority holding that defendant's crossing of fog line a single time gave officer probable cause to stop defendant for violating section -123(1), dissent holding that such driving did not); State v. Martin, No. E1999-01361-CCA-R3-CD, 2000 WL 1273889, at *6 (Tenn. Crim. App. Sept. 8, 2000) (opining in reference to section -123(1) that "we do not think that a momentary drift out of a lane constitutes *driving* a vehicle outside of a single lane"). However, we deem any interpretation of section -123 to be outside the scope of the certified question in this case because we have determined that Officer Massey had

12

probable cause to stop the Defendant based on his observation of the Defendant's violation of Section 115. Accordingly, we decline to address this aspect of the Defendant's argument in this particular case. But see State v. Smith, No. M2013-02818-SC-R11-CD, __ S.W.3d __, __, _____ WL _____, at *__ (Tenn. ___ __, 2016) (released simultaneously with this opinion and construing section -123(1)).

*Reasonable Suspicion of DUI*

The State asks this Court to consider whether Officer Massey had a reasonable suspicion that the Defendant was driving under the influence such that he had constitutional grounds on that independent basis to turn on his blue lights. As it is not necessary to the resolution of this appeal to address that issue, we decline to consider it. However, we will take this opportunity to reiterate the distinction between probable cause arising from an officer's observation of a motorist committing a minor traffic infraction, such as running a red light, and reasonable suspicion that the motorist is driving under the influence of an intoxicant based on the motorist's aberrant driving.

A police officer legitimately may seize a motorist even without witnessing the motorist commit a traffic violation (which would provide the officer with probable cause to stop the motorist) if the officer possesses a "reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (citing Terry v. Ohio, 392 U.S. 1, 20-21 (1968); State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997)). Thus, if an officer has a reasonable suspicion that a motorist is driving while intoxicated, the officer may pull the motorist over without a warrant and without seeing the motorist commit a "rules of the road" traffic infraction. Such stops are investigatory in nature, id., and "[t]he level of reasonable suspicion required to support an investigatory stop is lower than that required for probable cause," State v. Day, 263 S.W.3d 891, 902 (Tenn. 2008) (citing Alabama v. White, 496 U.S. 325, 330 (1990); Pulley, 863 S.W.2d at 31).

"Reasonable suspicion is a particularized and objective basis for suspecting the subject of a stop of criminal activity," Binette, 33 S.W.3d at 218, and must be "something more than an 'inchoate and unparticularized suspicion or hunch,'" Day, 263 S.W.3d at 902 (quoting Terry, 392 U.S. at 27). When evaluating whether a police officer had a reasonable suspicion to seize a motorist, courts must consider the "totality of the circumstances," including

> the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, . . . the pattern of operation of certain offenders[,] . . . [and] the rational inferences

13

and deductions that a trained officer may draw from the facts and circumstances known to him.

Yeargan, 958 S.W.2d at 632.

If, as in this case, an officer observes a driver actually commit a traffic infraction, the officer has probable cause to initiate a traffic stop. Vineyard, 958 S.W.2d at 736. If, however, the officer does not observe the motorist actually commit a traffic infraction but instead observes driving behavior sufficient to create a reasonable suspicion that the motorist is intoxicated, the officer may initiate a traffic stop to investigate further.[9] See generally Terry, 392 U.S. at 21; State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). We caution courts and attorneys to utilize the correct constitutional basis and the correct legal terminology when addressing a traffic stop's legality.

## Conclusion

Because Officer Massey observed the Defendant commit a traffic infraction by crossing the double yellow center lane lines in violation of Section 115, Officer Massey had probable cause to initiate the traffic stop of the Defendant. Accordingly, Officer Massey's seizure of the Defendant did not violate the Defendant's constitutional rights, and the trial court did not err in denying the Defendant's motion to suppress. Therefore, we affirm the judgment of the Court of Criminal Appeals.

_____
JEFFREY S. BIVINS, JUSTICE

---

[9] In State v. Smith, No. M2013-02818-SC-R11-CD, released simultaneously with this opinion, we recognize that some of our "rules of the road" statutes, including Tennessee Code Annotated section 55-8-123(1), also may support traffic stops based on reasonable suspicion rather than probable cause. ____ WL _____, at *__. Other than recognizing that there is a distinction between these two constitutional bases for stopping a motorist, we do not address this issue in this case.