# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### May 10, 2016 Session

## STATE OF TENNESSEE v. FREDDIE ALI BELL

**Appeal from the Circuit Court for Maury County**
**No. 24211      Robert L. Jones, Judge**

_____

**No. M2015-01999-CCA-R3-CD – Filed July 25, 2016**

_____

In conjunction with the entry of a nolo contendere plea to driving under the influence ("DUI"), Defendant, Freddie Ali Bell, reserved a certified question for appeal pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A) in which he asked this Court to determine whether the record supports the finding of probable cause or reasonable suspicion to legally permit a seizure of Defendant and his vehicle. After a review, we determine that the evidence supports a finding of probable cause for the stop. Consequently, the trial court's denial of the motion to suppress is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Claudia Jack, District Public Defender; Robin E. Farber, Assistant District Public Defender (at suppression hearing and on appeal); and Brandon E. White (on appeal), Columbia, Tennessee, for the appellant, Freddie Ali Bell.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Brent Cooper, District Attorney General; and Adam Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

_Factual Background_

Trooper Michael Kilpatrick stopped Defendant on State Route 50 in Maury County on February 16, 2014, at approximately 2:51 a.m. Defendant was subsequently indicted in May of 2015 for one count of driving under the influence, one count of reckless driving, and one count of violation of the seatbelt law. Defendant filed a motion to suppress the evidence on the basis that there was no probable cause, reasonable suspicion, or other legal justification for the stop and search.

At the hearing on the motion, Trooper Kilpatrick testified that he was driving west on State Route 50 near the Interstate 65 intersection in Maury County. Trooper Kilpatrick was following a line of about four vehicles. Defendant's vehicle was immediately in front of Trooper Kilpatrick. He noticed Defendant's vehicle go "over on the white fog line and end[] up driving on that white fog line [and] crossing over it." Defendant's vehicle came "back in his lane and then [after] just a very short . . . distance, it . . . went across the double yellow lines" as the vehicle crossed a bridge. Trooper Kilpatrick described the tires as being "clearly" on the left yellow line, meaning the driver's side of Defendant's vehicle was "in the other lane." Trooper Kilpatrick admitted that Defendant's "car was never fully into the eastbound lane."

At that time, Trooper Kilpatrick thought that it was possible that Defendant was impaired, especially because he was aware that there is a "bar that . . . closes around 3:00 a.m. [nearby]." He initiated a traffic stop by activating his blue lights because "it was reckless for [Defendant] to drive into the other the lane of traffic." Defendant was asked to exit the vehicle and was ultimately arrested for DUI.

In addition to Trooper Kilpatrick's testimony, the State introduced a video taken from the trooper's dash cam.

At the conclusion of the hearing, the trial court found the seizure "reasonable" and denied the motion. Subsequently, Defendant pled guilty to DUI and reserved a certified question for appeal. The reckless driving and violation of the seatbelt law charges were dismissed. The following certified question was reserved for appeal: "[w]hether the record supports the finding of probable cause or reasonable suspicion to legally permit a seizure of the defendant and his vehicle."

*Analysis*

Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that an appeal lies from any judgment of conviction upon a plea of guilty or nolo contendere if:

(A) [T]he defendant entered into a plea agreement under Rule 11(c) but explicitly reserved—with the consent of the state and of the court—the

right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

(iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A).

Although the parties agreed that Defendant's certified question of law regarding the legality of his traffic stop was dispositive of the case, we are not bound by that determination. *See State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003). Instead, we "must make an independent determination that the certified question is dispositive." *State v. Dailey*, 235 S.W.3d 131, 135 (Tenn. 2007) (citation omitted). "An issue is dispositive when this Court must either affirm the judgment or reverse and dismiss." *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984).

Our courts have explicitly addressed Rule 37(b)(2)(A)(ii), which requires that "the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved." The parameters of the rule define an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a [Tennessee Rule of Appellate Procedure] 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the

admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State, nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case.

*State v. Bowery*, 189 S.W.3d 240, 245 (Tenn. Crim. App. 2004) (internal quotation marks omitted) (quoting *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988)). The *Preston* requirements are mandatory. *Id.* at 245-46 (citing *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996)). The burden of "reserving, articulating, and identifying the issue" rests solely on the defendant. *Pendergrass*, 937 S.W.2d at 838. Failure to comply with the requirements results in a dismissal of the appeal. *Bowery*, 189 S.W.3d at 245-46 (citing *Pendergrass*, 937 S.W.2d at 837). Our supreme court has rejected a rule of substantial compliance and required strict compliance with *Preston*. *State v. Armstrong*, 126 S.W.3d 908, 912 (Tenn. 2003) (citations omitted).

The certified question presented in the order accompanying the judgment form is as follows: "Whether the record supports the finding of probable cause or reasonable suspicion to legally permit a seizure of the defendant and his vehicle." The order accompanying the certified question also delineates the facts underlying the traffic stop and subsequent arrest. The question itself does not. We note Defendant's certified question would have benefitted from the incorporation of more fact-specific references, however we hold that the substance of the question nevertheless satisfies our jurisdictional requirements and that the issue of whether the State had probable cause or reasonable suspicion for the stop is properly before this Court. *State v. Springer*, 406 S.W.3d 526, 531 (Tenn. 2013); *cf. State v. Adam George Colzie*, No. M1998-00253-CCA-R3-CD, 1999 WL 1074111, at *3 (Tenn. Crim. App. Nov. 30, 1999) (holding that a certified question was sufficient when it was "evident that [the] statement of the issue [reflected] the grounds for suppression that Defendant asserted at the trial court," even though it could have been more precisely drafted); *State v. Harris*, 919 S.W.2d 619, 621 (Tenn. Crim. App. 1995) (holding that even though "[t]he issue is not framed according to what might be referred to as standard 'law-school' format," *Preston* only requires that a certified question "clearly identify the scope and limits of the legal issues reserved"). We determine that the certified question presented in this case is dispositive because the only evidence in "the record" of Defendant's intoxication was the videotape of Defendant's driving and the testimony of Trooper Kilpatrick. Absent the evidence contained in the video and accompanying observations of the officer, reasonable

-4-

suspicion or probable cause would not have existed to support the traffic stop.  Therefore, we determine the certified question identifies the scope and limits of the issue reserved.

We will uphold a trial court's findings of fact at a suppression hearing unless the evidence preponderates to the contrary.  *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact."  *Id.*  "We afford to the party prevailing in the trial court the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence."  *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998).  As to the trial court's application of the law to the facts, however, we apply a de novo standard of review.  *Id.*

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures.  Tennessee's constitutional protections regarding searches and seizures are identical in intent and purpose to those in the federal constitution.  *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009).

In evaluating the constitutionality of warrantless searches, this Court must "evaluate the search or seizure under traditional standards of reasonableness" by balancing an individual's privacy interests against legitimate governmental interests.[1] *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).  "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement."  *State v. Yeargan*, 958 S.W.2d 626, 630 (Tenn. 1997).  Some of these recognized exceptions include search incident to arrest, plain view, exigent circumstances, and consent.  *State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010) (citing *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005)).  The State has the burden to demonstrate, by a preponderance of the evidence, that a warrantless search passes constitutional muster.  *State v. Harris*, 280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

In this case, Defendant insists that the "dashcam footage" does not support a finding of probable cause or reasonable suspicion to stop Defendant's vehicle.  Recently, in two separate decisions filed on the same day, the supreme court examined two separate traffic stops to determine whether the factual scenarios presented probable cause and/or reasonable suspicion necessary to justify the stops.  *State v. Davis*, 484 S.W.3d 138, 142 (Tenn. 2016); *State v. Smith*, 484 S.W.3d 393, (Tenn. 2016).  In *Davis*, the arresting

---

[1] We note that the State has a legitimate, substantial, and compelling interest in preventing drunk driving.  *See State v. James Dean Wells*, No. M2013-01145-CCA-R9-CD, 2014 WL 4977356, at *13 (Tenn. Crim. App. Oct. 6, 2014), *no perm. app. filed*.

officer witnessed the defendant cross the double yellow center lane lines with the two left wheels of the defendant's car in violation of Tennessee Code Annotated section 55-8-115.[2] The officer initiated the stop after concluding that none of the exceptions set forth in the statute applied to the defendant. The defendant was arrested for DUI, pled guilty, and reserved a certified question for review on direct appeal. *Id.* at 142. This Court affirmed, finding that the trial court had both reasonable suspicion and probable cause for the arrest. On appeal to the supreme court, the court interpreted Tennessee Code Annotated section 55-8-115 as

> an offense that is committed upon a vehicle crossing the center lane line(s) of a roadway on even one occasion when none of the four delineated exceptions applies. Therefore, a police officer who observes a motorist violating Section 115 will have probable cause to turn on his blue lights and stop the motorist.

*Id.* at 147 (footnotes omitted). In *Davis*, the proof showed that the two left wheels of the car driven by the defendant crossed the double yellow center line, giving the officer probable cause to initiate a traffic stop. *Id.* at 149.

In *Smith*, the traffic stop was initiated after an officer observed the defendant "once cross and twice touch the fog line marking the outer right lane boundary on an interstate highway." *Id.* at 398. The defendant was eventually charged with DUI and filed a motion to suppress. The trial court denied the motion. The defendant pled guilty and reserved a certified question of law. On appeal, this Court affirmed the trial court's judgment on the merits. *Id.* at 399. Defendant appealed to the supreme court. The statue at issue in *Smith*, Tennessee Code Annotated section 55-8-123, requires a vehicle to be driven "as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety." The court concluded:

> [W]hen an officer observes a motorist crossing a clearly marked fog line, the totality of the circumstances may provide a reasonable suspicion sufficient to initiate a traffic stop to investigate the possible violation of Section 123(1). If the officer observes circumstances rendering it practicable for the motorist to remain in her lane of travel, that observation will weigh in favor of reasonable suspicion. Similarly, if the officer observes that the motorist's crossing of the fog line in some specific regard was unsafe, indicating that the driver failed to first ascertain the safety of the lane excursion, that observation will weigh in favor of reasonable

---

[2] Tennessee Code Annotated section 55-8-115 provides that "[u]pon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway," except in certain circumstances.

suspicion. In all events, however, a trial court considering the legality of a stop made pursuant to Section 123(1) must consider all of the relevant circumstances in deciding whether the motorist's lane excursion gave the officer a constitutionally sufficient basis to at least suspect that the motorist was violating Section 123(1).

*Id.* at 410-11. In other words, "seizure of a motorist for a suspected violation of Section 123(1) must be supported, at a minimum, by a reasonable suspicion, based on all of the relevant circumstances, that the driver left her lane of travel when it was practicable to remain there and/or left her lane of travel without first ascertaining that it was safe to do so." *Id.* at 411.

Distinguishing the facts in *Smith* from *Davis*, the court noted that determining whether a driver violated the traffic statute at issue in *Davis* merely required "simple observation" to determine if a driver crossed the yellow center line, *Id.* at 402, while determining whether a driver violated the traffic statute at issue in *Smith* could not be determined except upon further investigation. The court in *Smith* analyzed the stop "from the position of a reasonable officer, the circumstances indicative of whether the driving conditions facing the Defendant allowed her to remain entirely in her lane 'as nearly as practicable.'" *Id.* at 413. The court concluded that "the totality of the circumstances" surrounding the stop established a reasonable suspicion that the defendant violated Section 123(1) when she crossed the fog line and failed to remain entirely within her lane of travel, providing justification for the stop enabling the officer to further investigate the reason for leaving the lane of travel. *Id.* at 414.

Looking at the scenario presented herein with *Smith* and *Davis* in mind, Trooper Kilpatrick testified that he observed Defendant's vehicle drive over the fog line on the right side of his lane of traffic before the vehicle corrected and "crosse[d] the double yellow [lines]." Our review of the videotape shows the vehicle crossing the fog line in a curve and, at the very least, the two left tires touching the outside edge of the double yellow line on a bridge. It was late at night and the weather appeared clear. The officer testified that the "[driver's side] tires were clearly" on the "left" of the two yellow lines, putting Defendant's "mirror and the rest of the side of the car across the line." We surmise that when Trooper Kilpatrick saw Defendant's vehicle cross or touch the fog line, as in *Smith*, it is not clear that the officer had reasonable suspicion to effectuate a traffic stop. However, it is unnecessary for this Court to examine the totality of the circumstances surrounding that incident because Trooper Kilpatrick based the stop on Defendant's vehicle crossing the yellow line. The videotape of the stop confirms that Defendant's left tires were touching and/or crossing the far left yellow line into the oncoming lane of traffic. Simple observation of a one-time violation of the bright-line rule explained in *Davis* is precisely what the officer needed to establish probable cause

for the stop herein. *See* 484 S.W.3d at 149. Consequently, the denial of the motion to suppress is affirmed.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE