[No. 34829-9-I.   Division One.   December 18, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v.
CHRISTOPHER RODERICK MITCHELL, *Appellant.*

144

*Michael Danko*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Robin E. Fox, Deputy*, for respondent.

BAKER, C.J. — While on night patrol in a police vehicle, an officer observed Christopher Mitchell and a companion walking down a street in a residential area in Seattle. Mitchell was carrying a semiautomatic handgun. As the officer passed Mitchell, he observed Mitchell tuck the handgun into his waistband. The officer reported his observation on the radio, turned his patrol car around, and approached Mitchell and his companion on an adjacent street. The officer stopped his car behind the two, with flashers and spotlight on. The two were walking away from, and had their backs to, the officer. The officer drew

his gun and ordered the two to stop and put their hands up. Mitchell tossed his handgun into some bushes while raising his hands. The officer then ordered the two to lie face down, with legs spread and arms at sides. The two remained in that position for two to three minutes until other officers arrived.

After discovering Mitchell's identity and criminal record, the officer arrested Mitchell for being an adjudicated minor in possession of a handgun. Mitchell was subsequently charged with unlawful possession of a firearm, having previously been convicted of a crime of violence, in violation of former RCW 9.41.040. The trial court denied Mitchell's motion to suppress the handgun, and found Mitchell guilty on stipulated facts.

I

Mitchell argues that the officer's stop of his person was a custodial arrest requiring probable cause. We hold that the initial detention of Mitchell was a valid *Terry*[1] stop.

A police officer may temporarily detain a person based on a reasonable suspicion that the person is or has been involved in criminal activity. The officer's reasonable suspicion must be based on objective facts. The detention must not exceed the duration and intensity necessary to confirm or dispel the officer's suspicions. If the stop exceeds these limitations, it can be justified only by a showing of probable cause.[2]

The intrusion upon Mitchell's liberty was greater than the typical *Terry* stop, which normally includes a frisk for weapons and brief questioning.[3] However, under certain circumstances measures such as handcuffing, secluding, and drawing guns on the suspect may be

---

[1]*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[2]*See, e.g., State v. Williams*, 102 Wn.2d 733, 737-40, 689 P.2d 1065 (1984).

[3]*See Williams*, 102 Wn.2d at 737.

appropriate to accomplish a *Terry* stop.[4] Such circumstance exists only when the police have a reasonable fear of danger.[5] For example, it is reasonable for an officer to draw a weapon to effect a stop where a suspect is believed to be armed.[6] In addition, an emergency situation may warrant temporary restraint of a suspect without investigation.[7]

We hold that the scope of this stop was within the bounds of a reasonable investigatory detention under the circumstances. As referred to in *Williams*, the officer in this case had legitimate concern for his safety and the safety of others because Mitchell was carrying a gun. In addition, the officer was justified in restraining Mitchell for a time without investigating his suspicions about criminal activity because the officer was alone and Mitchell had at least one companion who also may have been armed. Reasonable concern for the officer's own safety warrants the officer waiting for backup before approaching the suspects.

■ Mitchell argues that the intrusiveness of the stop amounted to an arrest. Contrary to Mitchell's contention, the intrusiveness of the stop is not the sole measure for determining whether a stop is an arrest or a *Terry* stop. The permissible scope of an investigatory stop is determined by all the circumstances facing the officer at the time of the stop.[8]

Mitchell was ordered to stop, raise his hands, and then lie down face first on the ground. Mitchell remained in

---

[4]*Williams*, 102 Wn.2d at 740.

[5]*See Williams*, 102 Wn.2d at 740 n.2.

[6]*See State v. Friederick*, 34 Wn. App. 537, 542, 663 P.2d 122 (1983); *see also State v. Franklin*, 41 Wn. App. 409, 411, 704 P.2d 666 (1985) (treating as an investigatory detention a stop effectuated by the officer holding his gun at his side and telling the suspect to "freeze" and to face the wall, and handcuffing the suspect).

[7]*Williams*, 102 Wn.2d at 741 n.3.

[8]*See State v. Belieu*, 112 Wn.2d 587, 605, 773 P.2d 46 (1989); *State v. Wheeler*, 108 Wn.2d 230, 237, 737 P.2d 1005 (1987).

that position for at least two or three minutes. Mitchell may not have known that the officer had his gun drawn, because the officer approached from behind. Nevertheless, Mitchell obeyed the command to lie down on the sidewalk. This was a grave intrusion upon his liberty. However, it is difficult to imagine a less intrusive means of effecting a stop of an armed suspect with a companion which would not compromise the officer's safety. The officer was clearly justified in trying to avoid an exchange of gun fire.

## II

■ Mitchell also argues that the stop was not justified because the officer could not articulate a reasonable suspicion, based on objective facts, that Mitchell was engaged in criminal activity. We hold first that the facts of this case support a reasonable suspicion of criminal activity. We also hold that the existence of such reasonable suspicion is determined based on an objective view of the known facts, and is not dependent upon the officer's subjective belief or upon the officer's ability to correctly articulate his or her suspicion in reference to a particular crime.

■ Under RCW 9.41.270 it is illegal to carry and display a weapon "in a manner, under circumstances, and at a *time* and *place* that either manifests an intent to intimidate another or *that warrants alarm for the safety of other persons.*"[9] (Emphasis added.) Mitchell was openly carrying a semiautomatic weapon while walking down a street in an urban, residential area at night. When ordered to stop and raise his hands, he tossed his weapon into nearby shrubbery. Openly carrying such a weapon at that time and place was sufficient to warrant reasonable suspicion that this statute was being violated.

The officer did not give unlawful display of a weapon as his reason for effecting the stop. Indeed, the officer testified that he saw nothing that in and of itself would constitute

---

[9]RCW 9.41.270(1).

a crime. However, the existence of a reasonable suspicion does not depend on the officer's subjective beliefs, but is determined based on an objective standard.[10] Much like the test for probable cause, the facts within the officer's knowledge must provide a basis for a reasonable suspicion. Although the officer did not name the particular crime for which he could articulate a reasonable suspicion, his suspicion was based on the very factors which constitute unlawful display of a weapon. The officer's stop was lawful.

Affirmed.

COLEMAN and WEBSTER, JJ., concur.

Reconsideration denied January 23, 1996.

Review denied at 129 Wn.2d 1019 (1996).

---

[10]*See Scott v. United States*, 436 U.S. 128, 137-38, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978); *State v. Barber*, 118 Wn.2d 335, 349, 823 P.2d 1068 (1992).