# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|                                  |     |                        |
|----------------------------------|-----|------------------------|
| THE STATE OF WASHINGTON,         | )   | No. 80450-2-I          |
|                                  | )   |                        |
| Respondent,                      | )   |                        |
|                                  | )   | DIVISION ONE           |
| v.                               | )   |                        |
|                                  | )   |                        |
| ANTWAUN DESHAWN PINES,           | )   |                        |
|                                  | )   | PUBLISHED OPINION      |
| Appellant.                       | )   |                        |
|                                  | )   |                        |

MANN, C.J. — Washington prohibits unreasonable searches and seizures without a warrant, unless one of the narrowly drawn exceptions to the warrant requirement applies. Antwaun Pines appeals his conviction for unlawful possession of a firearm in the first degree. Pines argues that the trial court improperly characterized his seizure and the subsequent warrantless search as a Terry[1] stop, and thus erred when denying his motion to suppress the firearm discovered during the search. We agree with Pines that his seizure exceeded the bounds of a valid Terry stop and was instead a custodial arrest. We also agree that the police lacked probable cause at the time of the arrest because they were acting on the unverified belief that there was a warrant for Pines's

_____

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

arrest. Because the search of Pines was not valid under Terry, nor as a search subsequent to a lawful arrest, the firearm recovered in that search should have been suppressed.

We reverse and remand to the trial court to dismiss Pines's conviction with prejudice.

FACTS

A. Background

On March 23, 2018, the anticrime team and gang units of the Seattle Police Department conducted an operation to locate individuals with warrants in the South Precinct and Central District of the city. After a morning briefing on "emphasis patrol" or "hot spot" emphasis, Detective Aaron Sausman was working plain clothes and conducting surveillance in the 9200 block of Rainier Avenue, South, attempting to locate "wanted subjects." Sausman was in his vehicle when he identified Pines driving a black BMW. Sausman recognized Pines and was aware of a February 2018 King County Sheriff's bulletin identifying a warrant for Pines on residential burglary and domestic violence. Sausman knew that Pines was previously convicted of a felony.

Sausman followed Pines to Columbia City, where Pines parked his vehicle and entered a Pagliacci Pizza restaurant. Sausman advised the uniformed arrest team that Pines was in the restaurant.

Detective Will Miller was one of three uniformed officers that entered the restaurant to contact Pines. As the officers entered, Pines began moving toward the other door. The officers tackled Pines to the ground, holding him down by the neck and head, and handcuffed him. Detective Sausman, after seeing Pines attempt to leave,

entered the restaurant. As the officers were handcuffing Pines, Sausman yelled out

"you're under arrest for your felony warrant." While handcuffing Pines, Miller saw

Pines's hand move towards his waistline, giving him concern that Pines had a weapon.

Once cuffed, the following exchange took place:

MILLER: Antwaun, do you got anything on you?

PINES: Yes, sir.

MILLER: What do you got?

PINES: You know what I got.

MILLER: Is it dope or do you got a gun?

PINES: You know that I don't smoke dope.

MILLER: Say what now?

PINES: I don't smoke dope.

MILLER: You got a gun on you? Where's it at? Your pocket?

PINES: Yes, sir.

Exhibit 1 at 1:50-3:50.[2] The officers then frisked Pines and found a handgun in

his jacket pocket.

Officers escorted Pines outside and read him his <u>Miranda</u>[3] rights. Thirteen

minutes after detaining Pines, the police confirmed that there was a valid warrant for

Pines's arrest.

---

[2] Exhibit 1 contains two body camera video recordings. The minute:second citation corresponds to the amount of time elapsed on the video.
[3] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1968).

B. Procedure

The State charged Pines with unlawful possession of a firearm in the first degree. Pines moved to suppress the handgun recovered during the search on the grounds that police lacked the lawful authority to detain and search him. The trial court heard testimony from Detectives Sausman and Miller during a pretrial CrR 3.6 hearing. The court found that Pines was not under arrest when officers contacted him in Pagliacci's, but was detained in accordance with the officers' reasonable suspicion that he had an outstanding warrant. The court further determined that Pines's attempt to flee required that the officers escalated the standard Terry stop detention tactics. After detention, the officers inquired about firearms for their personal safety, subsequently recovering Pines's handgun. The trial court denied Pines's motion to suppress.

Pines waived his right to jury and proceeded to a bench trial on stipulated facts. The trial court found Pines guilty and imposed a sentence of 24 months in prison.

Pines appeals.

## ANALYSIS

Pines argues that the trial court erred in finding that the search and discovery of his firearm was a lawful Terry stop, and thus denying his motion to suppress. Pines contends that his seizure amounted to a custodial arrest and that the police lacked probable cause at the time of his arrest.

We review a trial court's findings of fact at a suppression hearing for substantial evidence, which is such evidence that would persuade a rational, fair-minded individual of the truth of the finding. State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). We

review the trial court's conclusions of law in an order relating to suppression of evidence de novo. State v. Smith, 165 Wn.2d 511, 516, 199 P.3d 386 (2009).

Article I, section 7 of the Washington Constitution guarantees protections greater than those provided by the Fourth Amendment to the United States Constitution. State v. Eisfeldt, 163 Wn.2d 628, 634, 185 P.2d 580 (2008). Article I, section 7 provides that "no person shall be disturbed in his private affairs, or his home invaded, without authority of law." Washington prohibits unreasonable searches and seizures without a warrant, unless one of the few exceptions to the warrant requirement applies. State v. Day, 161 Wn.2d 889, 894, 168 P.3d 1265 (2007). "If the evidence was seized without authority of law, it is not admissible in court." Day, 161 Wn.2d at 894. We presume that warrantless searches violate the state and federal constitutions. Day, 161 Wn.2d at 894. The presumption can be rebutted if the State shows a search fell within certain "narrowly and [jealously] drawn exceptions to the warrant requirement." Day, 161 Wn.2d at 894. At issue here is whether the warrantless search of Pines was valid as a Terry stop, or as a search subsequent to arrest.

A. Terry Stop or Arrest?

There is no dispute that Pines was "seized" at the time the arresting officers searched him and recovered the handgun. A person is seized when an officer, by physical force or show of authority, restrains the person's freedom of movement such that a reasonable person would not believe they were free to leave. State v. O'Neill, 148 Wn.2d 564, 574, 62 P.3d 489 (2003). The State argues, and the trial court agreed, that Pines's seizure and subsequent search was the result of a valid Terry stop. We disagree.

In Terry v. Ohio, 392 U.S. 1, 10, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the United States Supreme Court carved out an exception to the warrant requirement by allowing officers to detain an individual as part of an investigatory stop. Under this exception, a police officer may stop and detain an individual for investigation if the officer reasonably suspects the person is engaged or about to be engaged in criminal conduct. State v. Garvin, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009). The officer may only frisk the individual for weapons when the officer has grounds to believe the individual is armed and presently dangerous. "For a permissible Terry stop, the State must show that (1) the initial stop is legitimate; (2) a reasonable safety concern exists to justify the protective frisk for weapons; and (3) the scope of the frisk is limited to the protective purposes." State v. Duncan, 146 Wn.2d 166, 172, 43 P.3d 513 (2002).

Under Terry, a police officer may temporarily detain a person based on a reasonable suspicion that the person is or has been involved in a crime. In evaluating the reasonableness of an officer's suspicion, we look to the totality of the circumstances known to the officer. State v. Fuentes, 183 Wn.2d 149, 158, 352 P.2d 152 (2015). We determine the reasonableness based on an objective view of the known facts, not the officer's subjective belief or ability to correctly articulate his suspicion in reference to a particular crime. State v. Mitchell, 80 Wn. App. 143, 148, 906 P.2d 1013 (1995). "The detention must not exceed the duration and intensity necessary to dispel the officer's suspicions." Mitchell, 80 Wn. App. at 144.

We also use an objective standard to determine whether an encounter with the police rises to the level of a formal arrest. State v. Reichenbach, 153 Wn.2d 126, 135, 101 P.3d 80 (2004). That is, whether a reasonable detainee under the circumstances

would consider themselves under custodial arrest.  State v. Radka, 120 Wn. App. 43, 49, 83 P.3d 1038 (2004); State v. Rivard, 131 Wn.2d 63, 75, 929 P.2d 413 (1997).

The State relies on Mitchell, to support its claim that the officers' tactics of tackling, and handcuffing Pines was legitimate under Terry.  In Mitchell, an officer working alone on night patrol observed Mitchell and a companion walking down the street in a Seattle residential neighborhood carrying a semiautomatic handgun.  The officer observed Mitchell tuck the handgun into his waistband.  80 Wn. App. at 144.  After reporting his observation by radio, the officer turned his vehicle around and approached the two from the rear with his flashers and spotlights on.  The officer got out of his vehicle, pulled his gun, and ordered the two to stop and put their hands up.  Mitchell tossed a handgun into the bushes as he raised his hands.  The officer ordered the two to lie face down with their legs spread and arms at their sides.  The two remained in that position for two to three minutes until other officers arrived.  After discovering his identity and criminal record, Mitchell was arrested for being an adjudicated minor in possession of a handgun.  Mitchell, 80 Wn. App. at 144-145.  The trial court denied Mitchell's motion to suppress the handgun.

On appeal, this court recognized that the detention on Mitchell's liberty was greater than the typical Terry stop, but affirmed the detention.  Mitchell, 80 Wn. App. at 144-145.  The court explained:

> The intrusion upon Mitchell's liberty was greater than the typical Terry stop, which normally includes a frisk for weapons and brief questioning.  However, under certain circumstances measures such as handcuffing, secluding, and drawing guns on the suspect may be appropriate to accomplish a Terry stop.  Such circumstance only exists when the police have a reasonable fear of danger.  For example, it is reasonable for an officer to draw a weapon to effect a stop where a

suspect is believed to be armed. In addition, an emergency situation may warrant temporary restraint of a suspect without investigation.

> We hold that the scope of this stop was within the bounds of a reasonable investigatory detention under the circumstances. As referred to in Williams, the officer in this case had legitimate concern for his safety and the safety of others because Mitchell was carrying a gun. In addition, the officer was justified in restraining Mitchell for a time without investigating his suspicions about criminal activity because the officer was alone and Mitchell had at least one companion who also may have been armed. Reasonable concern for the officer's own safety warrants the officer waiting for backup before approaching the suspects.

Mitchell, 80 Wn. App. at 145-46 (citing State v. Williams, 102 Wn.2d 733, 689 P.2d 1065 (1984)).

The court further explained that the stop did not rise to a custodial arrest, stating:

> Mitchell was ordered to stop, raise his hands, and then lie down face first on the ground. Mitchell remained in that position for at least two or three minutes. Mitchell may not have known that the officer had his gun drawn, because the officer approached from behind. Nevertheless, Mitchell obeyed the command to lie down on the sidewalk. This was a grave intrusion upon his liberty. However, it is difficult to imagine a less intrusive means of effecting a stop of an armed suspect with a companion which would not compromise the officer's safety. The officer was clearly justified in trying to avoid an exchange of gun fire.

Mitchell, 80 Wn. App. at 146-47.

Here, in stark contrast with Mitchell, the arresting officers did not observe Pines carrying a weapon. Indeed, as Detective Miller testified, they had no reason to contact Pines except for their belief that he might have a warrant. Further, unlike Mitchell, where the officer was alone at night, there were three uniformed police officers along with Detective Sausman at the scene. No officer testified that they feared for their safety prior to Pines's seizure or that they had seen a weapon prior to their search. And finally, unlike Mitchell where the defendant was told to lie down without contact from the

-8-

officer, the three uniformed officers forcefully took Pines to the ground and handcuffed him, while Detective Sausman yelled that Pines was under arrest on a felony warrant.

Viewed objectively, a reasonable person in Pines's situation would consider themselves under custodial arrest.[4]  Radka, 120 Wn. App. at 49.  Pines's seizure exceeded the scope of a valid Terry stop.  The trial court erred in concluding the search was valid under Terry.

### B.  Probable Cause

Pines next argues that the warrantless search was not valid under the search incident to arrest exception because the police lacked probable cause at the time of his arrest.  Pines contends that because the police failed to verify the existence of a warrant and instead acted on stale information that a warrant existed, they lacked probable cause for an arrest.[5]  We agree.

A search incident to arrest is another one of the carefully drawn and guarded exceptions to the article I, section 7 warrant requirement.  State v. Brock, 184 Wn.2d 148, 153, 355 P.3d 1118 (2015).  However, only a lawful arrest provides authority for a search incident to arrest.  O'Neill, 148 Wn.2d at 585.  The lawfulness of an arrest depends on the existence of probable cause.  State v. Moore, 161 Wn.2d 880, 885, 169 P.3d 469 (2007).

---

[4] While his subjective opinion, Detective Sausman testified that because he had informed Pines that he was under arrest, that the search was possibly incident to the arrest.

[5] Pines argues that the police lacked the authority of law to arrest him at the time he was seized because they failed to comply with Washington's procedural statute on executing arrest warrants.  RCW 10.31.030.  Because Pines failed to raise his RCW 10.31.030 argument before the trial court we will not consider it on appeal.  RAP 2.5(a)(3).

We use an objective standard to determine whether probable cause supports an arrest. State v. Gaddy, 152 Wn.2d 64, 70, 93 P.3d 872 (2004). Probable cause exists "when the arresting officer is aware of facts or circumstances" sufficient to cause a reasonable officer to believe a person committed a crime. Gaddy, 152 Wn.2d at 70. The burden is on the State to establish probable cause for an arrest. State v. Grande, 164 Wn.2d 135, 141, 187 P.3d 248 (2008). Probable cause cannot be supported by information the police gain following an arrest. State v. Mance, 82 Wn. App. 539, 542, 918 P.2d 527 (1996); Dunaway v. New York, 442 U.S. 200, 213, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979).

We turn next to whether the police had probable cause of a valid warrant for Pines's arrest at the time of his arrest. "The test for 'staleness' is one of common sense; if the facts indicate information is recent and contemporaneous, then it is not 'stale.'" State v. Perea, 85 Wn. App. 339, 343, 932 P.2d 1258 (1997) (quoting State v. Anderson, 41 Wn. App. 85, 95, 702 P.2d 481 (1985) rev'd on other grounds, 107 Wn.2d 745, 733 P.2d 517 (1987)). In Perea, for example, Division Two of this court held that week-old information was recent enough for the officer to form probable cause to arrest Perea at the moment the officer first saw him. Perea, 85 Wn. App. at 343.

The State relied on the testimony of Detectives Sausman and Miller to defend against Pines's motion to suppress. While Detective Sausman testified that he had attended a briefing on the morning of Pines's arrest, he did not testify that anyone at that briefing discussed there being a valid warrant for Pines. Sausman instead testified that he was aware of a warrant because he "was aware of a King County Sheriff's bulletin that had come out in February of 2018 for assault and residential burglary and

for domestic violence." Sausman confirmed that Pines's arrest was at least a month after he had seen the bulletin. While Sausman testified that he had been in contact with Detective Taglieri from the King County Sheriff's Office who told him he was looking for Pines, Sausman did not know when this occurred, and had not checked to see if Pines had posted bond. Sausman also confirmed that after observing Pines driving in a BMW on March 23, 2018, he did not radio in and verify the warrant and he did not know if any other officer had. Thus, in contrast with the one-week old information approved in Perea, Detective Sausman's testimony revealed that his information was a month old.

Detective Miller also testified that he had been at the briefing on March 23, 2018, and presumed, but did not know if anyone had verified a warrant from Pines. He explained that had he been in charge of the operation, he would have started the morning by verifying the warrants, but he was not in charge on March 23, 2018. Detective Miller testified on direct that he knew there was a warrant for Pines's arrest on March 23, 2018, because he had previously attempted to contact him at his family address on the warrant. On cross-examination, however, Miller could not recall when he had previously looked for Pines, confirming that it could have been two weeks or a month before. Again, in contrast with the one-week old information approved in Perea, Detective Miller's testimony revealed that his knowledge of a valid warrant was at least two-weeks or a month old.

Here, unlike Perea, common sense dictates that the information on a valid warrant for Pines was stale. Detective Miller testified that, had he been in charge, he would have verified the warrant on the morning before the operation. Yet the State offered no testimony that anyone had done so on March 23, 2018. Detective Miller also

disagreed with Detective Sausman's statement during the arrest that Pines was under arrest on the felony warrant, because he believed that verification of the warrant was necessary prior to an arrest on the warrant.[6]

Because there was no evidence offered of reasonably contemporaneous verification of an existing warrant, the police lacked probable cause to arrest Pines on the warrant at the time of the arrest. Without probable cause for the arrest, the warrantless search of Pines was invalid and in violation of article I, section 7.

Washington's "exclusionary rule requires the suppression of evidence obtained in violation of article I, section 7, with no exceptions that rely on speculation, the likelihood of deterrence, or the reasonableness of official misconduct." State v. Mayfield, 192 Wn.2d 871, 888, 434 P.3d 58 (2019). Because the warrantless search of Pines was not valid under Terry or as a search incident to a valid arrest, the firearm discovered during the search must be suppressed.

We reverse and remand to the trial court to dismiss Pines's conviction for first degree unlawful possession of a firearm with prejudice.

_____  
Mann, C.J.

WE CONCUR:

_____        _____

---

[6] We note also that it took only a few minutes for the arresting officers to radio in and verify the warrant after Pines's arrest. Common sense dictates that the arrest team could have verified the warrant after they watched Pines enter the restaurant and before they entered to contact him.