# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br> v.<br><br>J.G.<br><br>     Appellant. | No. 57188-9-II<br><br>UNPUBLISHED OPINION |

CHE, J. — J.G. appeals the trial court's ruling denying the suppression of evidence due to an unlawful stop of his vehicle, arguing that the trial court erred by failing to enter written findings and conclusions under both CrR 3.6 and JuCR 7.11, and that the evidence was insufficient to support a resisting arrest guilty adjudication. In January 2022, in the early morning hours, Deputy Kolby Schreier was on patrol when he observed a slow-moving vehicle near a group of mailboxes. Suspicious of possible mail theft, Schreier ran the vehicle's license plate and learned that an individual named J.G. had recently purchased the vehicle but had not transferred the title within 45 days and that J.G. had a third degree suspended license.

When the vehicle began to make a three-point turn, Schreier exited his patrol vehicle and approached the vehicle on foot. Schreier did not engage his emergency lights. After repeatedly

announcing his presence and knocking on the driver's window of the slow-moving vehicle, Schreier struck the driver's side window with his flashlight, causing it to shatter.

Schreier subsequently identified J.G. as the driver. J.G. refused to exit the vehicle. J.G. was charged with one count of resisting arrest, one count of obstructing a law enforcement officer, one count of third degree driving while license suspended, and one count of failure to transfer title within 45 days. The trial court denied J.G.'s CrR 3.6 motion to suppress and found J.G. guilty of one count of resisting arrest, one count of driving while license suspended, and one count of failure to transfer title. The trial court did not enter written findings and conclusions under either CrR 3.6[1] or JuCR 7.11(d).[2]

We hold that (1) the trial court's oral CrR 3.6 ruling is sufficient to permit our review, (2) the trial court did not err in denying J.G.'s motion to suppress, and (3) in the absence of written findings under JuCR 7.11(d), we decline to reach the merits of J.G.'s sufficiency of the evidence claim. Consequently, we affirm in part and remand in part for entry of findings and conclusions regarding J.G.'s adjudications.

We retain this case so that following entry of findings and conclusions, J.G. may resubmit a brief addressing his sufficiency of the evidence claim in light of the written findings and conclusions. The State will likewise have an opportunity to respond.

---

[1] CrR 3.6(b) states, "If an evidentiary hearing is conducted, at its conclusion the court shall enter written findings of fact and conclusions of law."

[2] JuCR 7.11(d) states, "The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision. The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal."

FACTS

I. BACKGROUND

In January 2022, just before 1:00 a.m., Jefferson County Sheriff's Deputy Kolby Schreier was on patrol. The ground was covered in snow and the roads were icy. While on patrol, Schreier observed a slow-moving vehicle near a group of mailboxes. Suspecting possible mail crimes, Schreier pulled up behind the vehicle but did not activate his emergency lights.[3]

Schreier ran the vehicle's license plate number on his in-vehicle computer. The return information listed the vehicle as having been sold to J.G. more than 45 days earlier. The return further indicated that title to the vehicle had not been transferred. The return included J.G.'s name, date of birth, and an incident number indicating that J.G. had previously been warned that his driver's license was suspended. Schreier also learned that J.G. had a third degree suspended license.

Schreier continued to follow the vehicle down a dirt road and it attempted to make a three-point turn. When the vehicle was about ten feet away and perpendicular to Schreier's patrol vehicle, Schreier exited his patrol vehicle and approached the vehicle on foot. Schreier did not engage his emergency lights.

As Schreier approached the vehicle, he observed the driver to be a "young black male." Rep. of Proc. (RP) at 23. Backlit by his patrol vehicle's headlights, Schreier shined his flashlight on his uniform and announced his presence. Tapping on the driver's side window, Schreier repeatedly announced "sheriff's office" and instructed the driver to stop their car; in these interactions, Schreier spoke in an increasingly loud voice. RP at 25. Standing on a one-lane

---

[3] Schreier had heightened concerns because he lived in the neighborhood.

gravel drive, Schreier "maneuvered a few times for officer safety reasons" while standing next to the vehicle. RP at 25. Schreier thought that the driver was pretending not to see him as the driver gave the officer a "peripheral look" but never fully turned to look at him. RP at 26.

After giving one last announcement to stop the vehicle, Schreier "transitioned [his] flashlight to [his] right hand and struck the driver's window . . . causing it to shatter." RP at 30-31. The driver accelerated and their vehicle slid into a ditch.

Schreier instructed the driver to step out of the vehicle, but the driver did not do so. Schreier asked, "[Y]ou're [J.G.], correct[?]" and "[the driver] said yes." RP at 35. Schreier advised J.G. he was under arrest and again told J.G. to step out of the vehicle. After the arrival of Sergeant Ryan Menday, J.G. exited the vehicle and was taken into custody.

The State charged J.G. with one count of resisting arrest, one count of obstructing a law enforcement officer, one count of third degree driving while license suspended, and one count of failure to transfer title within 45 days after the date of delivery of a vehicle.

## II. PROCEDURAL HISTORY

A. *CrR 3.6 Suppression Hearing*

In February 2022, J.G. moved to suppress all of the evidence obtained as a result of his seizure.[4] J.G. argued that the traffic stop was a racially motivated pretextual stop and exceeded the permissible scope of a *Terry*[5] stop.

---

[4] J.G. conceded that Schreier had "reasonable suspicion for a stop based on one or both [the] failure to transfer title after 45 days have passed, and/or driving with license suspended in the third degree." Rep. of Proc. (RP) at 67.

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

After Schreier's testimony and hearing counsels' arguments, the trial court articulated the following—a vehicle was driving very slowly at 1:00 a.m. in the snow and ice, in a neighborhood near a string of mailboxes.  The officer ran the license plate and found the vehicle title had not been transferred within 45 days after the date of delivery of the vehicle.  The vehicle was delivered to a person named J.G. whose driving privilege was suspended in the third degree and who had been warned about the suspension in November 2021.  Based on this, the officer had "reasonable suspicion then to determine who this driver was and whether it was [J.G.]."  RP at 74-75.

The officer had no idea that the driver was Black until he started to approach the vehicle and his lights were shining on the vehicle.  The officer "did nothing that had anything to do with any ethnicity or race or anything like that."  RP at 75.  The officer had not identified the driver so he could not simply mail a citation nor forward anything to the prosecutor.  RP at 75.  The trial court concluded, "This was not a pretext stop at all . . . what happened here . . . would not have been unusual for this to happen with anybody, anybody sitting in that car and doing exactly what happened here . . . [J.G.] wasn't going to let the officer identify him and he was trying to get away and he did everything he could to do that and got stuck in the ditch."  RP at 78.  The trial court denied the motion to suppress.

The trial court did not enter written findings and conclusions on the suppression hearing.

B.     *Adjudication and Disposition*

In March 2022, the trial court held an adjudicatory hearing.  The court incorporated Schreier's testimony from the suppression hearing into the trial record.  In addition to further testimony from Schreier, J.G. testified.

Prior to closing arguments, J.G. renewed his motion to suppress. The trial court denied J.G.'s motion. During its oral ruling concerning J.G.'s guilt, the trial court referenced the suppression hearing and revisited the issue of pretextual stops.

The trial court found J.G. guilty of one count of resisting arrest, one count of driving while license suspended, and one count of failure to transfer title. The trial court found that the State failed to prove that J.G. obstructed a law enforcement officer. The trial court imposed a standard range disposition of eight months of community supervision.

J.G. appeals. As of the date of this opinion, the trial court has not entered written findings or conclusions.

## ANALYSIS

### I. MOTION TO SUPPRESS

J.G. argues that the trial court erred by denying his motion to suppress and not entering written findings and conclusions; J.G. further argues that the stop was pretextual and improper under *Terry*.

### A. *Standard of Review*

In "reviewing a trial court's denial of a CrR 3.6 motion to suppress evidence, we determine whether substantial evidence supports the findings of fact and whether those findings of fact support the conclusions of law." *State v. Richards*, 11 Wn. App. 2d 84, 87, 450 P.3d 1238 (2019). We review de novo conclusions of law concerning the suppression of evidence. *State v. Arreola*, 176 Wn.2d 284, 291, 290 P.3d 983 (2012).

B.      *The Oral Ruling Is Sufficient to Permit Appellate Review*

J.G. argues that because the trial court failed to enter findings on his suppression motion, we must remand for the entry of written findings and conclusions under CrR 3.6 so as to allow for meaningful review.[6] We disagree.

Under CrR 3.6(b), the trial court must "enter written findings of fact and conclusions of law" after conducting an evidentiary hearing on a motion to suppress. The trial court's failure to enter findings of fact and conclusions of law is error; however, "such error is harmless if the trial court's oral findings are sufficient to permit appellate review." *Richards*, 11 Wn. App. 2d at 87.

Here, although the trial court erred in failing to enter written findings and conclusions under CrR 3.6(b), such error is harmless in light of the trial court's comprehensive oral ruling. The trial court's oral ruling contained numerous factual findings concerning Schreier's conduct and the events of the evening. Furthermore, it contained sufficient legal conclusions concerning the lawfulness of the stop, the amount of force employed, and whether the stop was pretextual.

Accordingly, in light of the trial court's extensive oral ruling, we hold that the trial court's oral ruling is sufficient to permit meaningful review.

---

[6] J.G. also argues that the trial court's initial CrR 3.6 ruling was inconsistent with its subsequent oral trial ruling. Specifically, J.G. argues that the trial court's initial ruling that Schreier "did everything he could to get [J.G.] just to stop the car" is inconsistent with its subsequent ruling that it did not "know whether the window had to be broken or not, [and was] not going to make that decision or go down that rabbit hole." RP at 75, 246. The trial court's subsequent statement was neither a finding nor a conclusion. Instead, the statement was part of the court's colloquy. In ruling on J.G.'s renewed motion to suppress, the trial court denied the motion without providing further comment. Thus, we decline to find inconsistency in the trial court's CrR 3.6 rulings.

C.      *The Stop Was Not Pretextual, Even Applying the Correct Standard*

J.G. contends that the trial court erred in finding that J.G.'s stop was not pretextual as it did not apply the "actual, conscious, and independent cause' test" in determining whether J.G.'s stop was pretextual.[7]  Br. of Appellant at 56.  We agree with the trial court that the stop was not pretextual, even applying the correct standard.

J.G. relies on *Arreola* to argue that the trial court failed to apply the "actual, conscious, and independent cause" test in determining whether J.G.'s traffic stop was pretextual.[8]  176 Wn.2d at 297.  In *Arreola*, our Supreme Court determined the constitutionality of a mixed-motive traffic stop.[9]  The court held that "a traffic stop is not unconstitutionally pretextual so long as investigation of either criminal activity or a traffic infraction . . . for which the officer has a reasonable articulable suspicion, is an actual, conscious, and independent cause of the traffic stop."  *Id.*  The court explained that a traffic stop related to a suspected traffic infraction is not pretextual where an officer independently and consciously determines that a traffic stop is reasonably necessary to further traffic safety and the general welfare.  *Id.* at 298-99.

---

[7] J.G. argues that the trial court failed to apply the "actual, conscious, and independent cause" test pursuant to *Arreola*, 176 Wn.2d at 288, "to each of [Schreier's] discretionary intrusions," including the decisions to (1) stop and approach J.G., (2) shatter J.G.'s window, and (3) place J.G. under arrest.  Br. of Appellant at 57.  J.G. provides no argument to support or explain why the test should be applied independently to each of these decisions.

[8] "A pretextual traffic stop occurs when a police officer relies on some legal authorization as 'a mere pretext to dispense with [a] warrant when the true reason for the seizure is not exempt from the warrant requirement.'"  *Arreola*, 176 Wn.2d at 294 (quoting *State v. Ladson*, 138 Wn.2d 343, 358, 979 P.2d 833 (1999)).

[9] A mixed-motive traffic stop is "a traffic stop based on both legitimate and illegitimate grounds."  *Arreola*, 176 Wn.2d at 297.

Under *Arreola*, a trial court should consider the officer's subjective intent and the objective circumstances in determining whether the officer appropriately exercised their discretion. *Id.* at 299. The court explained that the "trial court's inquiry should be limited to whether investigation of criminal activity or a traffic infraction . . . was an actual, conscious, and independent cause of the traffic stop." *Id.* at 299-300.

Here, the trial court did not explicitly discuss the "actual, conscious, and independent" cause test, but the trial court's oral ruling is sufficient to determine that the trial court properly considered Schreier's subjective intent and the objective circumstances of the stop. The court found that Schreier saw a slow-moving vehicle near a group of mailboxes. It was around 1:00 a.m. with icy roads and snow on the ground. Schreier ran the plate and discovered the vehicle had been delivered to J.G. but title had not been transferred within 45 days of the delivery. J.G.'s license was suspended after having been given a prior warning. Therefore, the trial court found Schreier had reasonable suspicion to believe that J.G. was the driver and that he had a suspended license. [10] The trial court further found that Schreier "did nothing that had anything to do with any ethnicity or race or anything like that" as Schreier "had no idea [J.G.] was black until he got out of his vehicle and started to approach [J.G.'s] vehicle and shined his light . . . [T]hat's when [Schreier] first knew that the driver was . . . a young black male." RP at 77. Schreier had already decided to approach the vehicle to investigate the failure to transfer title and driving with license suspended before becoming aware of the driver's race.

---

[10] J.G. agrees that, under these circumstances, driving while license suspended is a basis under RCW 10.31.100(3)(f) for a warrantless arrest.

Applying the "actual, conscious, and independent cause" test, substantial evidence supports that Schreier's subjective intent was to stop and investigate suspected criminal activity based on reasonable and articulable suspicions. This is particularly so when the objective circumstances established that Schreier did not know J.G.'s race or ethnicity prior to approaching J.G.'s vehicle on foot. The investigation of criminal activity was an actual, conscious, and independent cause of the traffic stop and demonstrated the officer appropriately exercised his discretion. We hold that substantial evidence supports the trial court's findings and those findings support its conclusion that the stop was not pretextual. Thus, we proceed to consider whether the stop exceeded the permissible scope of a *Terry* stop.

D.      *The Deputy's Actions Did Not Exceed the Permissible Scope of a* Terry *Stop*

J.G. argues that the trial court erred by denying his motion to suppress because Schreier's actions exceeded the proper scope of a *Terry* stop. We disagree. Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, warrantless searches and seizures are per se unreasonable unless the State can show that an exception to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249-50, 207 P.3d 1266 (2009). *Terry* investigative stops are one such exception to the warrant requirement. *Id.* at 249.

A *Terry* stop is permissible when an "officer has a reasonable suspicion, grounded in specific and articulable facts, that the person stopped has been or is about to be involved in a crime." *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). In determining whether a stop was proper, we must evaluate the totality of circumstances presented to the investigating officer. *State v. McLean*, 178 Wn. App. 236, 244, 313 P.3d 1181 (2013). A court should consider,

among other factors, the location of the stop, conduct of the seized individual, and the officer's experience and training. *Acrey*, 148 Wn.2d at 747. "The initial stop must be justified and its scope reasonably related to the initial justification." *State v. Gonzales*, 46 Wn. App. 388, 394, 731 P.2d 1101 (1986).

Determination of whether an officer exceeded the permissible scope of a *Terry* stop is a fact specific inquiry. *See State v. Lee*, 7 Wn. App. 2d 692, 703, 435 P.3d 847 (2019); *State v. Wheeler*, 43 Wn. App. 191, 195, 716 P.2d 902 (1986). The scope of the stop "must not exceed the duration and intensity necessary to confirm or dispel the officer's suspicions." *State v. Pines*, 17 Wn. App. 2d 483, 490, 487 P.3d 196 (2021) (internal quotation marks omitted) (quoting *State v. Mitchell*, 80 Wn. App. 143, 145, 906 P.2d 1013 (1995)). In determining the proper scope of a *Terry* stop we consider "the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained." *Lee*, 7 Wn. App. 2d at 702 (internal quotation marks omitted) (quoting *State v. Alexander*, 5 Wn. App. 2d 154, 160, 425 P.3d 920 (2018)).

An officer's minimal use of force and limited intrusion during an investigative stop is reasonable where a suspect fails to stop when asked to do so. *See State v. Lyons*, 85 Wn. App. 267, 271, 932 P.2d 188 (1997) (holding that an investigative stop was not transformed into a custodial arrest where an officer announced, "You're under arrest," and grabbed the suspect after he failed to stop walking when instructed to do so).

Here, Schreier's use of force in shattering J.G.'s window was justified by the unfolding events and did not exceed the scope of a *Terry* stop. First, as established above, Schreier had reasonable suspicion to conduct the *Terry* stop. Second, in light of the circumstances, Schreier's

11

breaking of J.G.'s window was reasonable. The stop occurred around 1:00 a.m., under snowy and icy conditions, on a county road. Schreier approached J.G.'s vehicle for the purpose of investigating suspected criminal activity. Schreier's patrol vehicle was approximately ten feet from J.G.'s vehicle when Schreier exited his vehicle and began approaching J.G.'s vehicle on foot. Schreier identified himself, shined a light on his uniform, and announced "sheriff's office." RP at 24. Schreier repeatedly tapped on J.G.'s window and announced his presence while standing approximately one foot away from J.G.'s vehicle, increasingly raising his voice and instructing J.G. to stop the vehicle. J.G. did not comply with Schreier's commands and instead continued to slowly pull away. J.G.'s interaction with Schreier was short in duration, lasting only about five to seven minutes. Schreier's gradual escalating response to J.G.'s noncompliance, under these circumstances, did not exceed the duration and intensity necessary to confirm or dispel his suspicions.

Therefore, Schreier's actions did not impermissibly exceed the proper scope of a *Terry* stop and the trial court did not err by denying J.G.'s motion to suppress.

## II. SUFFICIENT EVIDENCE AND FINDINGS OF FACT

J.G. argues that there is insufficient evidence to support his resisting arrest conviction. J.G. further argues that regardless of our decision on his sufficiency of the evidence claim, we must remand for entry of written findings and conclusions on his remaining counts.

The State argues that because J.G. was lawfully arrested, his actions in disobeying the officers' commands provides sufficient evidence to support his resisting arrest conviction. However, the State agrees that we should remand for the entry of written findings and conclusions. We agree that in the absence of written findings and conclusions under JuCR 7.11,

12

we are unable to consider J.G.'s sufficiency of the evidence claim at this time and accept the

State's concession.

The requirements of JuCR 7.11(d) are mandatory. *State v. Avila*, 102 Wn. App. 882, 896,

10 P.3d 486 (2000). Under JuCR 7.11(d) the juvenile court

> shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision. The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal.

Written findings and conclusions are necessary to enable adequate appellate review. *See*

*State v. Bynum*, 76 Wn. App. 262, 266, 884 P.2d 10 (1994).

Here, the prosecutor concedes that the State has not submitted written findings and

conclusions to the juvenile court. In the absence of any written findings or conclusions, we are

unable to review J.G.'s sufficiency of the evidence claim. We remand for the entry of findings

and conclusions regarding J.G.'s adjudications. We retain this case so that following entry of

findings and conclusions, J.G. may resubmit a brief addressing his sufficiency of the evidence

claim in light of the written findings and conclusions. The State will likewise have an

opportunity to respond.

## CONCLUSION

We hold that the trial court's oral CrR 3.6 ruling is sufficient to permit our review and

that the trial court did not err in denying J.G.'s motion to suppress. And, in the absence of

written findings under JuCR 7.11(d), we decline to reach the merits of J.G.'s sufficiency of the

evidence claim and remand for entry of findings and conclusions. Accordingly, we affirm in part

No. 57188-9-II

and reverse in part, remanding for entry of findings and conclusions regarding J.G.'s adjudications.

We retain this case so that following entry of findings and conclusions, J.G. may resubmit a brief addressing his sufficiency of the evidence claim in light of the written findings and conclusions. The State will likewise have an opportunity to respond.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Cruser, A.C.J.