# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>DALTON LOREN SMITH, aka DALTON L SMITH, DALTON SMITH,<br><br>Appellant. | No. 57872-7-II<br><br><br><br>UNPUBLISHED OPINION |

CRUSER, C.J. — Dalton Smith was found guilty of one count of unlawful possession of a firearm and one count of failure to have an ignition interlock device. Deputy Paul Simbeck and his partner responded to a call about an individual who had been passed out in the driver's seat of his vehicle at a gas station for three hours. After the deputies arrived and saw drug paraphernalia in the vehicle, they initiated a *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), investigative stop by turning off the vehicle. Deputy Simbeck grabbed Smith's arm before waking him to ensure his own safety. Smith reached toward his waistband, which Deputy Simbeck recognized as a furtive movement toward a concealed weapon and pulled him out of the vehicle. A frisk of Smith's waistband area revealed the firearm that formed the basis of the unlawful possession charge. Smith argues that although it was reasonable for Deputy Simbeck to initiate the *Terry* stop, grabbing Smith's arm exceeded the permissible scope and intensity of the detention because it was not the least intrusive means to investigate his suspicion. The State argues that

No. 57872-7-II

Deputy Simbeck acted reasonably throughout the stop and did not exceed the permissible scope and intensity. We disagree with Smith and hold that Deputy Simbeck acted reasonably in grabbing Smith's arm out of a reasonable concern for his safety.

In a statement of additional grounds for review (SAG),[1] Smith argues that the search and seizure was unconstitutional and that he was denied a complete copy of the record. We hold that Smith does not raise any arguments entitling him to relief.

Smith also argues that because he was indigent at the time of sentencing, we should remand to the trial court with instructions to strike the victim penalty assessment (VPA). The State concedes that Smith was indigent at the time of sentencing and that the case should be remanded in part. We affirm Smith's conviction, but accept the State's concession and remand to the trial court to strike the VPA.

FACTS

I. BACKGROUND

At around 1:00 a.m. on March 1, 2021, Deputy Simbeck and his partner were dispatched to a gas station. A 911 caller reported that a white vehicle had been parked between gas pumps for three hours with someone, later identified as Smith, sleeping or passed out in the driver's seat. The caller had knocked on the window of the vehicle in an attempt to wake the driver but got no response.

The deputies parked their vehicle behind the Smith's vehicle without sirens or lights. As they approached the vehicle, they saw that it was running with the radio blaring loud music. The deputies looked in the vehicle with flashlights as they approached and saw what they determined

---

[1] RAP 10.10.

2

to be drug paraphernalia throughout the front passenger compartment, center console, passenger seat, and passenger floor. Specifically, they saw hypodermic needles, a glass pipe, foil, cotton balls, and what Deputy Simbeck referred to as a "drug kit," a silicone container with more needles and a torch. 1 Verbatim Rep. or Proc. (VRP) at 26. The deputies confirmed that the vehicle was running but was in park.

Deputy Simbeck suspected that Smith was in physical control of a motor vehicle while under the influence, in violation of RCW 46.61.504.[2] This suspicion was based on the facts that the vehicle was running, the keys were in the ignition, Smith was passed out behind the wheel with music blaring, the 911 caller was unable to wake him, the vehicle was at a 24-hour gas station with public access to gas pumps and easy access to the road, and the presence of what the deputies recognized as drug paraphernalia.

Neither Deputy Simbeck nor his partner tried to wake Smith from outside the vehicle. Instead, Deputy Simbeck opened the door, reached over the steering column, and removed the keys from the ignition to turn off the vehicle, preventing Smith from waking and driving off. Deputy Simbeck placed the keys on either the roof or hood of the vehicle so they would be outside of Smith's immediate reach.

Out of concern that Smith could use one of the needles in close proximity as a weapon, Deputy Simbeck wanted to secure Smith before waking him and remove him from the vehicle before continuing the investigation. Deputy Simbeck placed his hands on Smith's left arm using

---

[2] We cite to the current version of RCW 46.61.504 because recent statutory amendments do not impact our analysis. *See* LAWS OF 2022, ch. 16, § 42.

the escort position, placing one hand on Smith's wrist and another on Smith's elbow. Simbeck announced he was a police officer and ordered Smith to step out of the vehicle.

When Simbeck placed his hands on Smith's arm, Smith woke up and his right hand drifted toward his right rear waistband. Deputy Simbeck identified this as a furtive movement, one made discreetly toward a concealed weapon. Deputy Simbeck saw this furtive movement as a significant safety threat to himself and the public and asked Smith to keep his hands in the air. Smith raised his hands momentarily before his right hand again drifted toward his waistband. At this point, Deputy Simbeck physically pulled Smith from the vehicle, concerned that he was reaching for a weapon. Deputy Simbeck put Smith on the ground and placed him in handcuffs, then proceeded to frisk him for weapons by checking his waistband and pockets. Deputy Simbeck found a gun concealed on the right side of Smith's waistband.

Smith was arrested and charged with first degree unlawful possession of a firearm and failure to have an ignition interlock device. The case proceeded to a jury trial.

## II. MOTION TO SUPPRESS EVIDENCE

Before trial, Smith filed a CrR 3.6 motion to suppress evidence of the firearm. In his motion, Smith conceded that the officers had a reasonable suspicion to investigate physical control, but argued that Deputy Simbeck escalated the situation beyond an investigatory stop by grabbing him and thus failing to use the least intrusive means reasonably available to investigate. Therefore, the seizure was unconstitutional and the firearm must be suppressed. The court held a suppression hearing in which Deputy Simbeck testified about the stop and arrest.[3]

---

[3] After the hearing, Smith filed a pro se motion to suppress the same evidence. The court did not hear the motion separately because it raised the same issues that were addressed in the previous motion to suppress.

The court denied the motion and concluded that Smith was not unlawfully seized. The court entered unchallenged findings of fact, specifically that after Deputy Simbeck removed the keys, he grabbed Smith's arm in an attempt to wake him or remove him from the vehicle, verbally identified himself as law enforcement and told Smith to step out of the vehicle, and Smith made a movement with his right arm toward his right waistband upon waking.[4]

The court concluded that Deputy Simbeck had a "reasonable, specific and articulable suspicion to conduct an investigatory detention" for the crime of physical control. Clerk's Papers (CP) at 140. The court also concluded that the stop became a *Terry* detention when Deputy Simbeck removed the keys from the ignition. Considering Deputy Simbeck's training and prior experience, the court concluded that the circumstances presented a reasonable safety concern to justify disabling Smith's vehicle and removing him from it to safely investigate. The court also concluded that, "[t]he deputy's intrusion, based on specific circumstances and the crime being investigated, was not overly invasive but instead were reasonable and permissive under case law." *Id.* In light of Smith's furtive movement toward his waistband, the court concluded that Deputy Simbeck was justified in conducting a nonintrusive frisk for weapons. Finally, the court concluded that from the viewpoint of a reasonable officer, Deputy Simbeck removing Smith from the vehicle, placing him in handcuffs, and frisking his waistband were reasonable.

---

[4] The court entered additional unchallenged findings of fact consistent with the version of events described above.

### III. VERDICT

At trial, the jury found Smith guilty of unlawful possession of a firearm and failure to have an ignition interlock. At sentencing, the court found Smith to be indigent. The court ordered the mandatory $500 VPA under former RCW 7.68.035(1)(a) (2018).

Smith appeals the denial of his motion to suppress evidence of the firearm, as well as the imposition of the VPA.

### ANALYSIS

### I. EVIDENCE OF THE FIREARM

Smith asks us to reverse his conviction because the evidence of the firearm, obtained as a result of the frisk, should have been suppressed as the initial seizure exceeded the permissible scope and intensity of a *Terry* detention when Deputy Simbeck grabbed Smith's arm. The State responds that Deputy Simbeck grabbing Smith's arm out of concern for his own safety was reasonable. We agree with the State and affirm Smith's conviction.

### A. LEGAL PRINCIPLES

Where, as here, the trial court's findings of fact on a CrR 3.6 motion are not challenged on appeal, they are verities. *State v. Alexander*, 125 Wn.2d 717, 723, 888 P.2d 1169 (1995). We review the trial court's conclusions of law de novo. *State v. Fuentes*, 183 Wn.2d 149, 157, 352 P.3d 152 (2015).

The Fourth Amendment to the Constitution protects individuals against unreasonable searches and seizures. Similarly, the Washington State constitution provides, "No person shall be disturbed in [their] private affairs, or [their] home invaded, without authority of law." WASH. CONST. art. I, § 7.

A seizure occurs when an officer restrains an individual's freedom of movement such that the individual believes they are not free to leave or decline a request due to an officer's use of force or display of authority. *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004).

Generally, warrantless searches and seizures are per se unreasonable. *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996). The State bears the burden to show that an exception applies for the purposes of admitting evidence obtained as a result of a warrantless search and seizure. *State v. Williams*, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984). If an exception is not shown, fruits of seizure must be suppressed. *Id.* at 742.

*1. Terry Investigatory Stop*

One exception, under *Terry*,[5] is that an officer may briefly detain a person for investigation with reasonable suspicion that the person is or is about to be involved in a crime, and that suspicion must be grounded in specific and articulable facts. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). Courts look to the totality of the circumstances known to the officer to determine the reasonableness of the detention. *State v. Pines*, 17 Wn. App. 2d 483, 490, 487 P.3d 196 (2021).

A *Terry* investigative detention is permissible only if (1) "the officer's action was justified at its inception," and (2) "it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20; *see also State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). As it relates to this second factor, we look at "the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained." *Williams*, 102 Wn.2d at 740. A *Terry* detention may ripen into a custodial arrest if the "degree of invasive force" used exceeds that which is reasonable for a mere investigative detention.

---

[5] 392 U.S. at 19.

*State v. Belieu*, 112 Wn.2d 587, 599, 773 P.2d 46 (1989); *Pines*, 17 Wn. App. 2d at 490-91. In that event, the State bears the burden of demonstrating that the arrest was supported by probable cause if it seeks to introduce evidence discovered during the arrest. *Pines*, 17 Wn. App. 2d at 493.

2. *Terry Frisk for Weapons*

As part of an investigative detention, an officer may conduct a "*Terry* frisk," which is a limited search for weapons, if the officer reasonably believes there is a safety risk. *Terry*, 392 U.S. at 30; *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017). To justify a nonintrusive frisk for weapons, the State must show that "(1) the initial stop is legitimate; (2) a reasonable safety concern exists to justify the protective frisk for weapons; and (3) the scope of the frisk is limited to protective purposes." *State v. Duncan*, 146 Wn.2d 166, 172, 43 P.3d 513 (2002). An example of a reasonable safety concern is when the suspect makes a furtive gesture or appears to be concealing a possible weapon. *State v. Chang*, 147 Wn. App. 490, 496, 195 P.3d 1008 (2008); *State v. Larson*, 88 Wn. App. 849, 856, 946 P.2d 1212 (1997).

B. APPLICATION

Smith argues that the evidence of the firearm was obtained via unlawful seizure and therefore should have been suppressed. Smith concedes that the stop was initially reasonable because the circumstances allowed Deputy Simbeck to reasonably suspect that Smith was in physical control of a motor vehicle while intoxicated. Smith also concedes that Deputy Simbeck was reasonably concerned that Smith might wake up and start driving, and dispelled that concern by removing the keys and placing them outside the vehicle. Smith argues that at this point, Deputy Simbeck should have spoken to him to wake him up and continue the investigation, and therefore exceeded the permissible scope and intensity by grabbing Smith's arm while he was still asleep.

Smith appears to argue that when an officer exceeds the allowable level of "intensity" for a *Terry* detention, the justification for the detention evaporates. Br. of Appellant at 13. In other words, he treats the "scope and intensity" argument as a standalone claim rather than correctly framing it as a stop that *rose to the level of a formal arrest* due to the intensity of the interaction—an arrest that can be validated by a showing of probable cause. *See Pines*, 17 Wn. App. 2d at 490-91.

The State argues that securing Smith's arm was reasonable under the totality of the circumstances based on Smith's apparent level of intoxication and ready access to needles that could be used as a weapon. Furthermore, the State argues, Smith's actions in twice reaching for his waistband justified Deputy Simbeck's decision to remove Smith from the vehicle so that Simbeck could confirm or dispel whether Smith had a concealed weapon in his waistband. With regard to Smith's scope and intensity argument, the State contends that Simbeck's actions were well within acceptable means and that, in any event, probable cause existed to arrest Smith for physical control of a motor vehicle in the event we were to conclude that Simbeck's action in pulling Smith out of the vehicle converted the detention to a formal arrest.

We agree with the State and conclude that Deputy Simbeck did not exceed the allowable scope of a *Terry* detention by securing Smith's arm. Based on the totality of the circumstances, Deputy Simbeck was reasonably concerned for his own safety and securing Smith's arm was reasonable in light of that concern.

The requirements for a valid *Terry* stop and frisk are satisfied. First, Smith concedes that the initial basis for the detention was legitimate. Second, it was reasonable for Deputy Simbeck to fear for his safety in light of Smith's apparent level of impairment and his ready access to needles that could be used as a weapon. Third, although Smith argues that Deputy Simbeck could have

secured his own safety through lesser means than those used, it was reasonable for Simbeck to secure Smith's arm in a way that allowed him to constrain Smith's movement. *See Belieu*, 112 Wn.2d at 599; *see also State v. Mitchell*, 80 Wn. App. 143, 145-46, 906 P.2d 1013 (1995).

Moreover, Smith was not detained for a significant amount of time. It was Smith who caused the interaction to escalate when he twice reached for his waistband. Once Smith had taken those actions it was reasonable for Deputy Simbeck to remove him from the vehicle and frisk him for weapons. The force used by Deputy Simbeck was minimal in comparison to the risk, and did not convert the *Terry* detention into a formal arrest. Securing Smith's arm momentarily while waking him and escorting him out of the vehicle did not exceed the permissible scope of the stop. The seizure was not unreasonable and we therefore affirm the trial court's order denying Smith's motion to suppress.[6]

## II. SAG

In his SAG, Smith argues that Deputy Simbeck grabbing his arm exceeded the permissible scope of a *Terry* detention because Deputy Simbeck could have used less intrusive means to investigate his suspicion of physical control. Smith argues that, as an officer with training and experience investigating intoxication, Deputy Simbeck should have known to follow the least

---

[6] Smith makes a confusing argument in which he appears to concede that the frisk for weapons was reasonable after Smith reached for his waistband, but that the frisk exceeded the allowable scope because the initial stop was not legitimate. However, elsewhere in his brief Smith conceded that the initial basis for the stop was reasonable. Smith appears to argue that a *Terry* frisk cannot be conducted unless the officer has a reason to believe the subject is armed and dangerous *at the inception of the stop*. This is not the law, and Smith cites no authority for this proposition. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post–Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We do not consider this argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

intrusive means, which would have been knocking on the window to get a response before grabbing Smith's arm. Smith also argues that Deputy Simbeck failed to point to facts that supported an inference that Smith was armed and dangerous.

We decline to review this argument. Arguments made in a SAG that have already been thoroughly addressed by counsel are not proper matters for review. RAP 10.10(a); *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012). This argument echoes the argument thoroughly addressed in appellant's brief, and therefore it is not a proper matter for separate review.

Smith also argues that there were unnecessary redactions and typos in the record that make it impossible for him to review and understand exactly what was said. A criminal defendant is constitutionally entitled to a " 'record of sufficient completeness' " to permit effective appellate review of his or her claims. *State v. Young*, 70 Wn. App. 528, 529, 856 P.2d 399 (1993) (quoting *Coppedge v. United States*, 369 U.S. 438, 446, 82 St. Ct. 917, 8 L. Ed. 2d 21 (1962)); *State v. Atteberry*, 87 Wn.2d 556, 560, 554 P.2d 1053 (1976). However, the absence of a portion of the record is not reversible error unless the defendant can demonstrate prejudice. *State v. Miller*, 40 Wn. App. 483, 488, 698 P.2d 1123 (1985).

We conclude that there is no reversible error because Smith has failed to demonstrate prejudice from the redactions in the record. Smith makes no argument other than the redactions denied him of his rights to make an educated decision about his future. This general assertion is insufficient to show prejudice.

### III. VPA

Effective July 1, 2023, courts may not impose the VPA on defendants who are found indigent at the time of sentencing as defined in RCW 10.01.160(3). RCW 7.68.035(4); LAWS OF 2023, ch. 449, § 1. Upon motion by a defendant, the court shall waive any VPA imposed prior to the July 1, 2023 amendment if the person does not have the ability to pay due to indigency. RCW 7.68.035(5)(b).

Smith argues that since he was indigent at the time of sentencing, the case should be remanded to strike the VPA. The State concedes that Smith was indigent at the time of sentencing and agrees to a remand to strike the VPA pursuant to RCW 7.68.035(5).

We accept the trial court's finding and the State's concession as to Smith's indigency at the time of sentencing and remand to strike the VPA.

### CONCLUSION

We affirm the conviction, but remand for the superior court to strike the $500 VPA fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 57872-7-II

CRUSER, C.J.

We concur:

MAXA, J.

LEE, J.